IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL NO. |
| v. | : | DATE FILED |
| GEORGE BARNARD | : | VIOLATIONS: |
| | | 18 U.S.C. § 1343 (wire fraud – 24 counts) |
| | : | 18 U.S.C. § 1344 (bank fraud – 6 counts) |
| | | 26 U.S.C. § 7206(1) (filing a false tax return – 3 counts) |
| | : | |
| | | 18 U.S.C. § 2 (aiding and abetting) |
| | : | Notice of forfeiture |

## I N D I C T M E N T

## COUNTS ONE THROUGH TWENTY-FOUR

THE GRAND JURY CHARGES THAT:

At all times relevant to this indictment:

1.     Starting in or about January 2005, and continuing to in or about March 2013, defendant GEORGE BARNARD and David Fili, Jr., charged separately, began operating Capital Financial Mortgage Corp. (hereinafter "CFMC"), as a mortgage brokerage company based in Delaware County, Pennsylvania.  Defendant BARNARD and Fili were each fifty percent owners of CFMC and ran CFMC together.

2.     In operating as a mortgage brokerage company, CFMC acted as an intermediary between borrowers and mortgage lenders.  CFMC employees gathered information from potential borrowers and forwarded that information to lenders, who underwrote and

approved the loans. The lenders paid CFMC a fee for each loan referral that resulted in a successful loan transaction.

3.     Beginning in or about January 2006, CFMC transitioned from being a mortgage brokerage company into being a direct mortgage lender. In operating as a direct mortgage lender, CFMC originated its own mortgages, acting as the lender itself. When CFMC originated a loan as a mortgage lender, CFMC funded the loan through the use of a warehouse line of credit, and then sold the loan to an institutional investor, typically a bank or other mortgage lender (hereinafter referred to collectively as the " Institutional Investors").

4.     For each mortgage loan that CFMC originated as a mortgage broker or issued as a direct mortgage lender, CFMC utilized the services of a settlement agent, commonly referred to as a "title agent" or "escrow agent." It was the job of the settlement agent to, among other things, issue wiring instructions to the lender, comply with the terms of the closing instructions, provide title closing services, issue title insurance policies, act as the escrow agent for the funds wired to the title company by the lender, disburse escrow funds to satisfy any prior liens, repay any existing first-mortgages and otherwise distribute the escrow funds pursuant to the "HUD-1 Settlement Statement," and then record the deed and mortgage with the appropriate municipality.

5.     A "HUD-1 Settlement Statement" is a standard form required to be used in connection with mortgage loan for the purpose of purchasing or refinancing real estate that itemizes all charges imposed on the borrower and seller and otherwise provides the borrower, seller, lender, and title agent with a complete itemization of all incoming and outgoing funds in connection with the mortgage loan, including amounts, and recipients.

6.     In order for a company to operate as a "title agent," the company must first have to secure a title agency relationship with a title insurance company. The title insurance company authorizes the title agent to, in essence, serve as its agent and issue title insurance policies backed by the title insurance company. Lenders who issue mortgage loans require the issuance of a title insurance policy that is paid for by the borrower and that protects the lender's interest in the property should a problem arise with the title to the real estate after the mortgage is issued.

7.     "Warehouse lending" is a specialized type of lending that commercial banks, other financial institutions, and other large mortgage lenders provide, for a fee, to smaller entities involved in the mortgage banking business. Typically, under a warehouse lending contractual agreement, the warehouse lender provides interim financing for mortgage loans by establishing a warehouse line of credit from which a mortgage lender can borrow, or "draw," in order to fund mortgage loans that the mortgage lender originates. Under these types of agreements, the warehouse lender typically advances funds at the request of the mortgage lender. The warehouse lender then typically retains a security interest in the mortgage loan as collateral until the warehouse advance is repaid.

8.     CFMC entered into contractual agreements with the following warehouse lenders (hereinafter referred to collectively as the "Warehouse Lenders") during the following periods of time, pursuant to which the Warehouse Lenders extended to CFMC warehouse lines of credit, which CFMC drew upon to issue mortgage loans:

a.     Popular Warehouse Lending, LLC, between in or about 2006 and in or about 2007;

3

b.     National City Bank, FDIC Certificate Number 6557, between in or about February 2007 and in or about December 2008;

c.     PNC Bank, National Association, FDIC Certificate Number 6384, between in or about January 2009 and in or about December 2009;

d.     Flagstar Bank, FSB, FDIC Certificate Number 32541, between in or about January 2010 and in or about February 2013;

e.     Customers Bank, FDIC Certificate Number 34444, between in or about March 2012 and in or about March 2013; and

f.     First Funding, Inc., between in or about February 2013 and in or about March 2013.

9.     Each of the contractual agreements entered into between CFMC and the Warehouse Lenders provided that the Warehouse Lenders would advance funds only upon the submission by CFMC of certain required documents and only for disbursal through a third-party settlement agent (i.e., a title company).  Each Warehouse Lender required CFMC to submit documentation indicating the loan number, borrower's name, investor's name, closing agent's name, note amount, requested purchase date, the total amount of the wire requested from the warehouse line of credit, and various other documentation, including a Closing Protection Letter issued by the settlement agent and wiring instructions for the settlement agent's escrow account.

10.     Beginning prior to the inception of CFMC and continuing to in or about October 2011, defendant GEORGE BARNARD also had an ownership interest, either directly or indirectly, in various title companies, including PA/NJ Abstract, Inc. doing business as ("dba") East Coast Land Transfer (hereinafter "PANJ Abstract"), PANJ Land Transfer LLC, Tri-State Land Transfer LLC, Nationwide Land Transfer LLC, Atlantic Closing Services LLC and Gulf

4

Coast Land Transfer Inc. (hereinafter collectively referred to as "defendant BARNARD's Title Companies"). Defendant BARNARD's Title Companies maintained separate bank accounts for purportedly to pay defendant BARNARD's Title Companies' operating expenses, as well as separate bank accounts referred to as "trust" or "escrow" accounts into which were placed monies sent by lenders based on the lenders' expectation and understanding that the funds would be held in escrow to fund mortgage loans and only disbursed in accordance with the HUD-1 Settlement Statements.

11.     After the inception of CFMC, defendant BARNARD's Title Companies shared office space with CFMC in Delaware County, Pennsylvania.

12.     Between in or about January 2005 and in or about October 2011, CFMC primarily used one of defendant BARNARD's Title Companies as the third-party settlement agent (i.e. title agent) for the mortgage loans CFMC brokered and originated.

13.     Between in or about October 2011 and in or about March 2013, CFMC primarily used Park Avenue Abstract, Inc. (hereinafter "Park Avenue Abstract"), a title company owned by Richard C. Roney, Jr., charged separately, as the third party settlement agent (i.e., title agent) for the mortgage loans CFMC originated.

## THE SCHEME

14.     Beginning sometime prior to December 2005, and continuing until in or about March 2013, within the Eastern District of Pennsylvania and elsewhere, defendant

## GEORGE BARNARD

together and with David Fili, Jr., and others known and unknown, devised and intended to devise a scheme to defraud and to obtain money and property by means of false and fraudulent pretenses, representations, and promises.

## MANNER AND MEANS

15.     Beginning in or about December 2005 and continuing until in or about March 2013, defendant GEORGE BARNARD made and caused to be made at least $425,000 in personal purchases using various CFMC business credit cards issued by Capital One Bank and American Express, including approximately $166,000 in charges relating to repairs and improvements to residential real properties owned by defendant BARNARD and approximately $161,000 in charges related to boating and fishing, all of which were made for defendant BARNARD's personal use and benefit and not for the benefit of CFMC, which defendant BARNARD caused to be paid for by CFMC.

16.     Beginning in or about December 2005 and continuing until in or about March 2013, defendant GEORGE BARNARD made and caused to be made at least $310,000 in personal purchases using various PANJ Land Transfer and PANJ Abstract business credit cards issued by Capital One Bank and American Express, including approximately $117,000 in charges related to repairs and improvements to residential real properties owned by defendant BARNARD and approximately $104,000 in charges related to boating and fishing, all of which were made for defendant BARNARD's personal use and benefit and not for the benefit of PANJ Land Transfer or PANJ Abstract, which defendant BARNARD caused to be paid for by PANJ Land Transfer and PANJ Abstract.

17.     Beginning in or about January 2006 and continuing until in or about March 2013, defendant GEORGE BARNARD caused approximately 989 payments to be made on the CFMC, PANJ Land Transfer, and PANJ Abstract business credit cards issued by Capital One Bank Visa and American Express from bank accounts owned and controlled by CFMC and various of defendant BARNARD's Title Companies.

6

18.     Beginning approximately sometime prior to June 2006, and continuing until approximately March 2013, in order to purchase and make improvements to luxury beach homes, including 221 65th Street, Avalon, New Jersey, 39 E. 25th Street, Avalon, New Jersey, 670 First Avenue, Avalon, New Jersey, and 75501 Overseas Highway, Islamorada, Florida, in order to purchase a home in Newtown Square, Pennsylvania for use as a personal residence, in order to purchase and operate sport fishing yachts, and in order to fund an expensive lifestyle that included luxury vehicles, paying the salary of a yacht captain, and renting a luxury suite at the Wells Fargo Center, defendant GEORGE BARNARD began withdrawing money from CFMC and from defendant BARNARD's Title Companies' that had been advanced by lenders to fund mortgage loans. Defendant BARNARD did not disclose to the lenders that he was using the loan proceeds for his own personal use and instead led the lenders to believe that the funds would be used in the manner reflected on the HUD-1 Settlement Statements provided to the lenders. Defendant BARNARD's personal use of escrow funds caused a monetary shortage in defendant BARNARD'S Title Companies' escrow accounts, which in turn caused delays in paying off, or satisfying, the first mortgages of those clients who were refinancing their homes.

19.     In order to hide the escrow account shortage from lenders, defendant GEORGE BARNARD simply created and caused to be created new title companies that he owned either openly or surreptitiously, and then rolled the existing escrow shortages over to the new title companies. Because defendant BARNARD's Title Companies maintained a steady stream of business through CFMC, defendant BARNARD was initially able to satisfy the outstanding mortgages, although this was typically done late, by using funds advanced by lenders for subsequent loans to close earlier loans whose funds had been misappropriated by defendant BARNARD. In this manner, defendant BARNARD was able to keep defendant

BARNARD's Title Companies afloat as he continued to siphon money from them for his personal use, all the while maintaining a rolling and ever-growing escrow account shortage.

20.     Beginning in or about January 2006 and continuing to in or about March 2013, David Fili, Jr. withdrew money from CFMC to fund his own excessive spending, which included mortgage payments on a vacation home and extensive casino and sports gambling.

21.     On or about May 31, 2006, defendant GEORGE BARNARD caused check number 17659 in the amount of approximately $10,000 to be issued from and cashed against the escrow account of PANJ Abstract ending in 8813 at The Bancorp Bank in Wilmington, Delaware, representing defendant BARNARD's initial down payment for defendant BARNARD's purchase of a luxury beach home located at 221 65th Street, Avalon, New Jersey.

22.     On or about June 20, 2006, defendant GEORGE BARNARD caused check number 17718 in the amount of approximately $180,000 to be issued from and cashed against the escrow account of PANJ Abstract ending in 8813 at The Bancorp Bank in Wilmington, Delaware, representing the remainder of defendant BARNARD's down payment for defendant BARNARD's purchase of 221 65th Street, Avalon, New Jersey.

23.     On or about December 14, 2007, defendant GEORGE BARNARD caused a wire transfer in the amount of approximately $10,000 to be made from the escrow account of PANJ Land Transfer ending in 6957 at The Bancorp Bank to an account held by Ferguson Dechert Real Estate in New Jersey, representing the initial down payment on defendant BARNARD's purchase of a luxury beach home located at 39 E. 25th Street, Avalon, New Jersey.

24.     On or about January 11, 2008, defendant GEORGE BARNARD caused a wire transfer in the amount of approximately $80,000 to be made from the escrow account of

8

PANJ Abstract ending in 3680 at The Bancorp Bank, representing the remainder of defendant BARNARD's down payment for defendant BARNARD's purchase of 39 E. 25th Street, Avalon, New Jersey.

25.    On approximately 27 occasions between on or about October 20, 2008, and on or about July 11, 2011, defendant GEORGE BARNARD caused wire transfers totaling approximately $307,000 to be made from CFMC's bank accounts and defendant BARNARD's Title Companies' bank accounts to defendant BARNARD's mortgage account at Stonebridge Bank in West Chester, Pennsylvania, in order to pay defendant BARNARD's mortgage of his property at 39 E. 25th Street, Avalon, New Jersey.

26.    On or about December 10, 2008, defendant GEORGE BARNARD caused transfers of funds totaling approximately $146,438 that two of defendant BARNARD's Title Companies, PANJ Abstract and PANJ Land Transfer, held in trust for others, to be made into the operating account of Nationwide Land Transfer ending in 9183 at The Bancorp Bank in Wilmington, Delaware, in order to fund the down payment defendant BARNARD was required to make to purchase another luxury beach home located at 670 First Avenue, Avalon, New Jersey.

27.    On or about April 30, 2009, defendant GEORGE BARNARD caused a check in the amount of approximately $25,000, representing a portion of defendant BARNARD's down payment for the purchase of his home in Newtown Square, Pennsylvania, to be issued as check number 50276 from the operating account of Nationwide Land Transfer ending in 9183 at The Bancorp Bank.

28.    On or about June 22, 2009, defendant GEORGE BARNARD caused a second check in the amount of approximately $25,000, representing the remainder of defendant

BARNARD's down payment for the purchase of his home in Newtown Square, Pennsylvania, to be issued as check number 50361 from the operating account of Nationwide Land Transfer ending in 9183 at The Bancorp Bank.

29.     On at least ten occasions between on or about October 30, 2009, and on or about August 27, 2010, defendant GEORGE BARNARD caused wire transfers totaling approximately $89,000 to be made from CFMC's bank accounts and defendant BARNARD's Title Companies' bank accounts to defendant BARNARD's mortgage account at The Bancorp Bank, in order to pay defendant BARNARD's mortgage of his property at 221 65th Street, Avalon, New Jersey

30.     On approximately 35 occasions between on or about August 19, 2009, and on or about February 28, 2013, defendant GEORGE BARNARD caused wire transfers totaling approximately $814,000 to be made from CFMC's bank accounts and defendant BARNARD's Title Companies' bank accounts to defendant BARNARD's mortgage account at Sturdy Savings Bank in Stone Harbor, New Jersey, in order to pay defendant BARNARD's mortgage of his property at 670 First Avenue, Avalon, New Jersey.

31.     On approximately 69 occasions between on or about February 1, 2010, and on or about March 4, 2013, defendant GEORGE BARNARD caused debits totaling approximately $135,000 to be made via the automated clearing house ("ACH") system from bank accounts owned and controlled by CFMC and Nationwide Land Transfer, in order to make mortgage payments on defendant BARNARD's residence in Newtown Square, Pennsylvania.

32.     In order to mitigate problems caused by the escrow shortage at defendant BARNARD'S Title Companies that arose from defendant BARNARD's personal use of escrow funds, and in order to hide the existence of the scheme from the Institutional Investors and the

Warehouse Lenders, defendant GEORGE BARNARD and David Fili, Jr. also used funds from CFMC's warehouse lines of credit to satisfy delinquent first mortgages.

33.     In order to hide the existence of the scheme from the Institutional Investors and the Warehouse Lenders, defendant GEORGE BARNARD and David Fili, Jr. took steps to hide defendant BARNARD's ownership interest in and control over defendant BARNARD'S Title Companies by, among other things, listing other persons, including defendant BARNARD's spouse, K.B., as the owner of one or more of defendant BARNARD'S Title Companies, and in response to questions from Institutional Investors and Warehouse Lenders falsely claiming that defendant BARNARD had no ownership interest in or control over any title companies, including on the following dates:

a.     On or about June 22, 2009 and May 10, 2010, defendant BARNARD and Fili sent Flagstar Bank, FSB signed "Representations of Borrower/Guarantors" forms in which defendant BARNARD and Fili falsely claimed that they each had no direct or indirect interest and/or ownership in any title company, escrow company, closing office or other related real estate activities.

b.     On or about May 28, 2010, Fili sent NYCB Mortgage Company LLC a signed "Affiliated Business Certificate" in which Fili falsely represented that neither he nor defendant BARNARD had any ownership interest, either directly or indirectly, in a title company.

c.     On or about April 20, 2011, defendant BARNARD sent an email to Shawn Cressman, Account Executive at NYCB Mortgage Company LLC, on which Fili was copied, in which defendant BARNARD falsely claimed, among other things, that defendant BARNARD had no ownership interest in a title company.

34.     As to those loans that CFMC originated as a direct mortgage lender, in order to generate cash flow and free up its warehouse line of credit (so that it could issue more loans) it was necessary for CFMC to sell its loans to Institutional Investors. However, because of the escrow shortage at defendant BARNARD's Title Companies, CFMC routinely failed to timely satisfy the outstanding first mortgages that existed on the properties. In selling and attempting to sell to Institutional Investors the mortgage loans that CMFC had issued, defendant GEORGE BARNARD and David Fili, Jr. falsely represented CFMC's loans to be "first mortgages," and failed to disclose that, at the time of the sale and attempted sale of CFMC's loans, CFMC and defendant BARNARD'S Title Companies had failed to satisfy the then-existing first mortgages. Thus, at the time CFMC sold and attempted to sell many of its mortgages, despite being held out as "first mortgages," they were in reality second mortgages that were subsidiary to the then-unpaid existing first mortgages. However, by using subsequent draws from CFMC's warehouse lines of credit, CFMC and defendant BARNARD's Title Companies were typically able to satisfy the first mortgages before the Institutional Investors discovered that they had in fact purchased a second mortgage that was subject to an unpaid first mortgage.

35.     In or about early 2010, CFMC itself began to experience serious cash flow problems leaving it with insufficient operating funds, which was caused in part by defendant GEORGE BARNARD's and David Fili Jr.'s use of CFMC funds to both pay their own personal expenses (including, among other things, mortgage payments for multiple homes, payments on multiple luxury vehicles, country club membership dues, a rental of a suite at the Wells Fargo Center, mortgage payments for defendant BARNARD's ship mortgage, and credit card

payment), and to cover defendant BARNARD'S Title Companies' escrow account shortage without regard for whether the funds were legitimately available in CFMC's bank accounts.

36. Beginning in 2010, in order to hide the existence of the scheme from the Institutional Investors and the Warehouse Lenders, defendant GEORGE BARNARD began transferring large amounts of money between defendant BARNARD'S Title Companies' escrow accounts (which had been provided by lenders to fund specific mortgage loans) and CFMC to help cover CFMC's operating expenses and to allow for the further withdrawal of CFMC funds to pay for defendant BARNARD's and David Fili, Jr.' personal expenses. For example, in 2010 alone, defendant BARNARD's Title Companies transferred over $1,300,000 to cover personal expenses of defendant BARNARD, and over $500,000 to cover a portion of CFMC's operating expenses. However, because these transfers were made using funds that had been wired by lenders to be used in connection with specific loans, the transfer of these funds to CFMC only served to further increase the escrow account shortage of defendant BARNARD'S Title Companies.

37. In or about June 2011, in an effort to come up with funds to reduce the escrow account shortage existing at defendant BARNARD's Title Companies, defendant GEORGE BARNARD and David Fili, Jr. agreed with each other to "refinance" their personal residences through CFMC, then sell the refinance loans to Institutional Investors without satisfying the then-existing first mortgages on their personal residences, and then use the proceeds from the sale of the refinance loans to reduce defendant BARNARD'S Title Companies' escrow account shortage.

38. On or July 7, 2011, defendant GEORGE BARNARD and David Fili, Jr. caused their accountant, B.H., to prepare a false, backdated sales contract purporting to

document the sale by defendant BARNARD of his CFMC stock to Fili, which defendant BARNARD and Fili intended to use to convince the Warehouse Lenders that defendant BARNARD had no ownership in CFMC, when in reality defendant BARNARD continued to own and jointly control CFMC with Fili.

39.     On or about September 19, 2011, defendant GEORGE BARNARD and David Fili, Jr., acting as the owners of CMFC and using defendant BARNARD's Atlantic Closing Services as the title company, caused CFMC to approve an approximately $417,000 mortgage loan from CFMC to defendant BARNARD to refinance his own residence located in Newtown Square, Pennsylvania.  At the time, U.S. Bank National Association held a first mortgage on defendant BARNARD's residence, and defendant BARNARD and Fili agreed that they would not disburse any of the refinancing loan proceeds to U.S. Bank National Association to satisfy that first mortgage.

40.     On or about September 30, 2011, defendant GEORGE BARNARD and David Fili, Jr., acting as the owners of CMFC, and using Atlantic Closing Services as the title company, caused CFMC to approve an approximately $416,000 mortgage loan from CFMC to Fili to refinance his personal residence located in Havertown, Pennsylvania.  At the time, Bank of America, N.A. held a first mortgage on Fili's residence, and defendant BARNARD and Fili agreed that they would not disburse any of the refinancing loan proceeds to Bank of America, N.A. to satisfy that first mortgage.

41.     In or about October 2011, defendant GEORGE BARNARD attempted to forestall an audit of Atlantic Closing Services by Westcor Land Title Insurance Company ("Westcor LTIC"), the title insurance underwriter for Atlantic Closing Services, by making false

14

representations about his own health, and when that failed by refusing to produce documents requested by the auditors.

42.     In or about October 2011, defendant GEORGE BARNARD, knowing that the Westcor LTIC audit findings would result in Atlantic Closing Services losing its underwriter (and hence its ability to sell title insurance policies) convinced Richard C. Roney, Jr., who was then the owner of another title company, Park Avenue Abstract, to enter into a new business relationship with CFMC.  Roney agreed with defendant BARNARD that from that point forward, Park Avenue Abstract would serve as the title company for the majority of CFMC's mortgage loans, with defendant BARNARD operating a branch of Park Avenue Abstract from CFMC's offices in Delaware County, Pennsylvania, and Roney operating a branch of CFMC from Park Avenue Abstract's offices in New Jersey.  In forming this new business relationship, defendant BARNARD misled Roney about the financial health of CFMC, failed to disclose to Roney the existence of the escrow shortage at defendant BARNARD's Title Companies, misled Roney about the reasons that defendant BARNARD was terminating his own escrow operations, and promised Roney vast profits that never materialized.

43.     On or about October 20, 2011, Atlantic Closing Services was officially terminated as an agent for Westcor LTIC.  As of that date, Atlantic Closing Services no longer had a title insurance underwriter, was unable to issue title insurance policies, and was therefore forced to cease operations as a title company.  At the time Westcor LTIC terminated Atlantic Closing Services as an agent, Atlantic Closing Services had an escrow shortage of over $4,000,000, approximately 17 first mortgages that it had failed to repay, and virtually no money it its bank accounts, leaving it unable to satisfy these approximately 17 outstanding first mortgages.

44.     Defendant GEORGE BARNARD and David Fili, Jr. hid the Atlantic Closing Services escrow account shortage from Richard C. Roney, Jr. and obtained access from Roney to newly-created Park Avenue Abstract bank accounts at PNC Bank. By gaining access to these Park Avenue Abstract bank accounts, defendant BARNARD and Fili were able to continue concealing their scheme and gain direct access to funds advanced by the Warehouse Lenders to Park Avenue Abstract, which defendant BARNARD and Fili used to pay their own personal expenses.

45.     Defendant GEORGE BARNARD and David Fili, Jr. concealed from the Warehouse Lenders and the Institutional Investors that they had obtained access to Park Avenue Abstract's bank accounts at PNC Bank and instead led the Warehouse Lenders and the Institutional Investors to believe that Park Avenue Abstract was an independent third-party settlement agent.

46.     Defendant GEORGE BARNARD and David Fili, Jr. used advances from CFMC's warehouse line of credit that were sent to Park Avenue Abstract by lenders in connection with other loans to secretly satisfy the 17 unpaid first mortgages that Atlantic Closing Services had failed to satisfy prior to being terminated by Westcor LTIC. In this way, defendant BARNARD and Fili effectively rolled over the approximately $4,000,000 escrow shortage from defendant BARNARD'S Title Companies to Park Avenue Abstract.

47.     On or about November 8, 2011, defendant GEORGE BARNARD and David Fili, Jr. caused the approximately $416,000 second mortgage held by CFMC on Fili's residence in Havertown to be sold by CFMC to NYCB Mortgage Company LLC ("NYCB"). At the time they sold this mortgage, defendant BARNARD and Fili failed to disclose to NYCB that

16

they had failed to satisfy the first mortgage held by Bank of America, N.A., and instead led NYCB to believe that it was purchasing a first mortgage on Fili's residence.

48.     On or about November 22, 2011, defendant GEORGE BARNARD and David Fili, Jr. caused the approximately $417,000 second mortgage held by CFMC on defendant BARNARD's residence in Newtown Square to be sold by CFMC to Wells Fargo Home Mortgage ("WFHM"). At the time they sold this mortgage, defendant BARNARD and Fili failed to disclose to WFHM that they had failed to satisfy the first mortgage held by U.S. Bank National Association, and instead led WFHM to believe that it was purchasing a first mortgage on defendant BARNARD's residence.

49.     Beginning in or about April 2012, CFMC transitioned its primary warehouse lender from Flagstar Bank to Customers Bank and began borrowing money from Customers Bank on the new warehouse line of credit.

50.     On or about April 13, 2012, defendant GEORGE BARNARD created false wiring instructions for Customers Bank to use when advancing funds on the Customers Bank warehouse line of credit. These false wiring instructions purported to be from Park Avenue Abstract, and appeared on their face to contain the account information for Park Avenue Abstract's escrow account at PNC Bank and listed Park Avenue Abstract as the account holder, but in reality the account number was an account that belonged to CFMC, not Park Avenue Abstract. Defendant BARNARD and David Fili, Jr. then caused these false wiring instructions to be sent to Customers Bank in connection with warehouse line of credit advance requests. By misleading Customers Bank into believing it was wiring warehouse line of credit advances into the escrow account of what it believed to be an independent, third-party title company, defendant BARNARD and Fili lulled Customers Bank into believing its funds would be disbursed as

17

indicated in the closing instructions.  However, these false wiring instructions allowed defendant BARNARD and Fili to gain immediate access to funds advanced on the Customers Bank warehouse line of credit and to control when, if ever, the loan proceeds would be sent to Park Avenue Abstract's legitimate escrow account for dispersal in connection with the actual loan the funds had been advanced for.

51.     On or about January 6, 2012, in order to mislead Flagstar Bank into thinking that CFMC was independent from defendant BARNARD'S Title Companies and that defendant GEORGE BARNARD did not have involvement with CFMC's management, David Fili, Jr. sent an email to Flagstar Bank enclosing a false sales contract, signed by both defendant BARNARD and Fili, which purported to document the sale by defendant BARNARD of his CFMC stock to Fili.

52.     On or about October 23, 2012, after defendant GEORGE BARNARD and David Fili, Jr. learned that NYCB had discovered that the prior first mortgage held by Bank of America, N.A. on Fili's residence in Havertown, Pennsylvania, had not been repaid, defendant BARNARD caused to be opened a new bank account at PNC Bank in the name of Atlantic Closing Services, over which defendant BARNARD had access and control.

53.     On or about October 23, 2012, defendant GEORGE BARNARD and David Fili, Jr. caused a withdrawal of approximately $415,788 from a Park Avenue bank account at PNC Bank over which they had gained control, the deposit of those funds into the newly-opened Atlantic Closing Services bank account at PNC Bank, and the wiring of those funds to NYCB to be used to satisfy the unpaid first mortgage held by Bank of America, N.A. on Fili's residence in Havertown.

54. On or about October 24, 2012, David Fili, Jr. sent an e-mail to NYCB enclosing a letter from Fili in which Fili falsely claimed that CFMC's failure to satisfy the first mortgage on his residence in Havertown prior to selling the loan to NYC was a simple mistake.

55. On or about October 25, 2012, fearing that Flagstar Bank could end its warehouse relationship with CFMC and uncover the fraudulent scheme, David Fili, Jr. sent a letter to Flagstar Bank containing numerous false statements, including that he was not aware that his prior mortgage had not been repaid and that defendant GEORGE BARNARD was no longer involved with CFMC.

56. Between in or about November 2011 and in or about March 2013, defendant GEORGE BARNARD caused wire transfers to be made of over $1,000,000 from Park Avenue Abstract and CFMC bank accounts for his own personal expenses, which further increased the Park Avenue Abstract escrow account shortage.

57. As the escrow account shortage that had originally begun with defendant BARNARD'S Title Companies and was ultimately rolled over to Park Avenue Abstract continued to grow due to defendant GEORGE BARNARD's and David Fili, Jr.'s misuse of warehouse line of credit draws for their own personal use, additional warehouse credit was needed to support the fraud scheme. Defendant BARNARD and Fili agreed that they would seek and obtain additional warehouse lines of credit from other lenders.

58. In or about January 2013, defendant GEORGE BARNARD and David Fili, Jr. caused CFMC to submit an application, signed by Fili, to Stonegate Mortgage Corp. for a new warehouse line of credit. This application contained false 2011 and 2012 CFMC financial statements prepared by CFMC's accountant, B.H., which did not accurately depict CFMC's financial condition.

19

59.     In or about February 2013, defendant GEORGE BARNARD and David Fili, Jr. caused CFMC to submit an application, signed by Fili, to First Funding Inc. for a new warehouse line of credit.  This application contained false CFMC financial statements prepared by CFMC's accountant, B.H., which did not accurately depict CFMC's financial condition.

60.     Between in or about January 2013 and in or about March 2013, defendant GEORGE BARNARD and David Fili, Jr. misled several Institutional Investors who purchased approximately 27 loans from CFMC by causing those loans to be misrepresented as "first mortgages" when in reality CFMC and Park Avenue Abstract had failed to repay the then-existing first mortgages and they were in fact second mortgages.  Unlike with earlier sales of mortgages by CFMC to Institutional Investors, with respect to these 27 second mortgages, CFMC and Park Avenue Abstract never satisfied the outstanding first mortgages because they never obtained sufficient funds on new loans to pay back the old loans.  These 27 loans were in addition to defendant BARNARD's 2011 refinancing of his Newtown Square residence, which had also been falsely sold to an Institutional Investor as a "first mortgage" and the outstanding first mortgage never satisfied.  Thus, at the time the scheme ended in or about March 2013, those Institutional Investors who had purchased these approximately 28 total loans from CFMC were left with worthless second mortgages, causing them to sustain approximate losses as follows:

a.     Stonegate Mortgage Corporation, based in Indianapolis, Indiana, purchased approximately 21 worthless second mortgages from CFMC for approximately $5,355,500 believing them to be first mortgages.

b.     M&T Bank, based in Buffalo, NY, (FDIC #588), purchased approximately 4 worthless second mortgages from CFMC for approximately $854,699 believing them to be first mortgages.

20

c.     Wells Fargo Home Mortgage, based in Des Moines, Iowa, a division of Wells Fargo Bank (FDIC #3511), purchased one worthless second mortgage from CFMC for approximately $417,000 believing it to be a first mortgage.

d.     NYCB Mortgage Company, LLC, based in Cleveland, Ohio, a subsidiary of New York Community Bank (FDIC # 16022), purchased one worthless second mortgage from CFMC for approximately $320,000 believing it to be a first mortgage.

e.     Mortgage Services III, LLC, based in Bloomington, Illinois, a subsidiary of First State Bank (FDIC #15752), purchased one worthless second mortgage from CFMC for approximately $166,347 believing it to be a first mortgage.

61.     Moreover, in addition to misleading these Institutional Investors, defendant GEORGE BARNARD and David Fili, Jr. caused approximately 27 individual clients of CFMC who had gone to CFMC to borrow money to refinance their homes to be misled into believing that their first mortgages would be satisfied, when in reality their first mortgages were never satisfied and instead defendant BARNARD and Fili misappropriated the entire amount of the new loan proceeds and then sold the loans to unsuspecting Institutional Investors. By their actions, defendant BARNARD and Fili left these approximately 27 individual clients with two mortgages on their properties.

62.     By in or about March 2013, at the time the scheme ended, CFMC had failed to repay to Customers Bank over $2,500,000 due on advances from the Customers Bank warehouse line of credit for approximately 19 new loans, which defendant GEORGE BARNARD and Fili had misappropriated, causing Customers Bank to sustain losses of over $2,500,000.

21

63.     All told, as a result of their actions, defendant GEORGE BARNARD and Fili., caused Warehouse Lenders and Institutional Investors to sustain total losses of approximately $9,700,000.

64.     On or about each of the following dates, in the Eastern District of Pennsylvania and elsewhere, defendant

## GEORGE BARNARD

along with other persons known and unknown to the grand jury, for the purpose of executing the scheme described above, and attempting to do so, and aiding and abetting its execution, caused to be transmitted by means of wire communication in interstate commerce the signals and sounds described below, each transmission constituting a separate count:

| COUNT | DATE | ORIGIN OF WIRE | DESTINATION OF WIRE | METHOD OF WIRE AND DESCRIPTION |
|-------|------|----------------|---------------------|--------------------------------|
| 1 | 7/11/11 | Delaware | Eastern District of Pennsylvania | Bank wire transfer of approximately $8,745.24 from Nationwide Land Transfer account at The Bancorp Bank in Wilmington, Delaware ending in 9183 to defendant GEORGE BARNARD's mortgage loan account at Stonebridge Bank in West Chester, Pennsylvania ending in 7514 representing a payment on defendant BARNARD's mortgage loan for 39 E. 25th Street, Avalon, New Jersey. |
| 2 | 9/19/11 | Eastern District of Pennsylvania | Michigan | Mortgage loan package for defendant GEORGE BARNARD's residence in Newtown Square, Pennsylvania uploaded electronically via the internet from CFMC to Flagstar Bank. |

| COUNT | DATE | ORIGIN OF WIRE | DESTINATION OF WIRE | METHOD OF WIRE AND DESCRIPTION |
|---|---|---|---|---|
| 3 | 9/21/11 | Eastern District of Pennsylvania | New Jersey | E-mail from defendant GEORGE BARNARD's email address at CFMC to S.G. of Customers Bank's Warehouse Lending Department providing information about tax returns submitted in support of CFMC's warehouse line of credit application. |
| 4 | 10/11/11 | Eastern District of Pennsylvania | Michigan | Mortgage loan package for David Fili Jr.'s residence in Havertown, Pennsylvania uploaded electronically via the internet from CFMC to Flagstar Bank. |
| 5 | 10/18/11 | Eastern District of Pennsylvania | New York | Email from defendant GEORGE BARNARD's email address at CFMC to K.L.'s email address at Atlantic Closing Services requesting file numbers for unpaid Atlantic Closing Services title files |
| 6 | 10/21/11 | Eastern District of Pennsylvania | New York | Email from defendant GEORGE BARNARD's email address at Atlantic Closing Services to K.L.'s email address at Atlantic Closing Services directing K.L. to place defendant BARNARD's signature on the agreement terminating Atlantic Closing Services' relationship with Westcor LTIC. |
| 7 | 11/23/11 | Eastern District of Pennsylvania | New Jersey | Bank wire transfer of approximately $27, 511 from CFMC account at PNC Bank ending in 4014 to 670 First Avenue LLC's mortgage loan account at Sturdy Savings Bank in New Jersey ending in 9988 representing payment on defendant GEORGE BARNARD's mortgage loan for 670 First Avenue, Avalon, New Jersey. |

| COUNT | DATE | ORIGIN OF WIRE | DESTINATION OF WIRE | METHOD OF WIRE AND DESCRIPTION |
|---|---|---|---|---|
| 8 | 1/6/2012 | Eastern District of Pennsylvania | Kentucky | E-mail from David Fili, Jr.'s email address at CFMC to Senior VP for Warehouse Lending at Customers Bank attaching false CFMC financial statements. |
| 9 | 2/14/12 | Eastern District of Pennsylvania | Delaware | Bank wire transfer of approximately $8,000 from Park Avenue Abstract account at PNC Bank in Philadelphia, Pennsylvania ending in 4153 to Lobascio Concrete Pavers' account at TD Bank in Wilmington, Delaware ending in 5550 representing payment for pool deck construction at defendant GEORGE BARNARD's residence in Newtown Square, Pennsylvania. |
| 10 | 4/20/12 | Eastern District of Pennsylvania | North Carolina | Bank wire transfer of approximately $10,000 from Park Avenue Abstract account at PNC Bank in Philadelphia, Pennsylvania ending in 4153 to Chadwick Boatworks' account at Branch Banking & Trust in Winston-Salem, North Carolina ending in 4567 representing payment on a 60-foot custom sport fishing boat being built for defendant GEORGE BARNARD. |
| 11 | 5/2/12 | Eastern District of Pennsylvania | Florida | Bank wire transfer of approximately $203,122 from CFMC's account at PNC Bank in Philadelphia, Pennsylvania ending in 4049 to Hershoff, Lupino & Yagel LLP's account at Community Bank of Florida ending in 6406 representing payment on defendant GEORGE BARNARD's and David Fili, Jr.'s purchase of an investment property located at 75501 Overseas Highway, Islamorada, Florida. |

| COUNT | DATE | ORIGIN OF WIRE | DESTINATION OF WIRE | METHOD OF WIRE AND DESCRIPTION |
|---|---|---|---|---|
| 12 | 6/15/12 | Eastern District of Pennsylvania | Georgia | Bank wire transfer of approximately $43,500 from Park Avenue Abstract account at PNC Bank in Philadelphia, Pennsylvania ending in 4153 to Gulf Coast Yacht Sales' account at SunTrust Bank in Georgia ending in 8074 representing payment on a 28-foot Buddy Davis center console boat for defendant GEORGE BARNARD. |
| 13 | 6/14/12 | Eastern District of Pennsylvania | Georgia | Bank wire transfer of approximately $17,500 from CFMC account at PNC Bank in Philadelphia, Pennsylvania ending in 4049 to Gulf Coast Yacht Sales' account at SunTrust Bank in Georgia ending in 8074 representing payment on a 28-foot Buddy Davis center console boat for defendant GEORGE BARNARD. |
| 14 | 6/26/12 | Eastern District of Pennsylvania | New Jersey | Bank wire transfer of approximately $3,500 from CFMC account at PNC Bank in Philadelphia, Pennsylvania ending in 4153 to Terminator Tackle's account at Fulton Bank in New Jersey ending in 8254 representing payment for fishing gear for defendant GEORGE BARNARD. |
| 15 | 7/20/12 | Eastern District of Pennsylvania | Pennsylvania | E-mail from defendant GEORGE BARNARD's email address at CFMC to his accountant, B.H., with copies to David Fili, Jr., and CFMC employee, C.E., asking B.H. to send defendant BARNARD items needed for CFMC's submission to a warehouse lender. |

| COUNT | DATE | ORIGIN OF WIRE | DESTINATION OF WIRE | METHOD OF WIRE AND DESCRIPTION |
|---|---|---|---|---|
| 16 | 8/16/12 | Eastern District of Pennsylvania | North Carolina | Bank wire transfer of approximately $12,000 from CFMC account at PNC Bank Philadelphia, Pennsylvania ending in 4049 to Chadwick Boatworks` account at Branch Banking & Trust in Winston-Salem, North Carolina ending in 4567 representing payment on a 60-foot custom sport fishing boat being built for defendant GEORGE BARNARD. |
| 17 | 10/23/12 | Eastern District of Pennsylvania | New York | Bank wire transfer of approximately $410,597 from Atlantic Closing Services' account at PNC Bank ending in 2342 to NYCB Mortgage Company Account at New York Community Bank account ending in 0000. |
| 18 | 10/24/12 | Eastern District of Pennsylvania | New Jersey | E-mail from David Fili, Jr.'s email address at CFMC to NYCB Mortgage Company LLC enclosing letter from Fili |
| 19 | 1/10/13 | Eastern District of Pennsylvania | New Jersey | E-mail from David Fili, Jr.'s email address at CFMC to Customers Bank's Warehouse Lending Department attaching false wiring instructions listing Park Avenue Abstract as account holder but providing CFMC bank account number ending in 4102 at PNC Bank. |
| 20 | 1/15/13 | New York | Eastern District of Pennsylvania | Bank wire transfer of approximately $321,533 from NYCB Mortgage Company LLC account to Customers Bank Warehouse Lending account ending in 1534, to be applied to CFMC's outstanding warehouse line of credit balance |

26

| COUNT | DATE | ORIGIN OF WIRE | DESTINATION OF WIRE | METHOD OF WIRE AND DESCRIPTION |
|---|---|---|---|---|
| 21 | 2/28/13 | Eastern District of Pennsylvania | New Jersey | Bank wire transfer of approximately $22,106 from CFMC account at PNC Bank in Philadelphia, Pennsylvania ending in 4049 to 670 First Avenue LLC's mortgage loan account at Sturdy Savings Bank in New Jersey ending in 9988 representing payment on defendant GEORGE BARNARD's mortgage loan for 670 First Avenue, Avalon, New Jersey. |
| 22 | 3/4/13 | Eastern District of Pennsylvania | Indiana | E-mail from David Fili, Jr.'s email address at CFMC to Stonegate Mortgage requesting update on the funding status for nine mortgages that CFMC was selling to Stonegate Mortgage. |
| 23 | 3/6/13 | Illinois | Eastern District of Pennsylvania | Bank wire transfer of approximately $166,347 from Mortgage Services III LLC bank account to Customers Bank Warehouse Lending account ending in 1534 , to be applied to CFMC's outstanding warehouse line of credit balance. |
| 24 | 3/7/13 | New York | Eastern District of Pennsylvania | Bank wire transfer of approximately $168,611 from M&T Bank's Residential Mortgage Division account to Customers Bank Warehouse Lending account ending in 1534, to be applied to CFMC's outstanding warehouse credit line balance. |

All in violation of Title 18, United States Code, Sections 1343 and 2.

## COUNT TWENTY-FIVE

**THE GRAND JURY FURTHER CHARGES THAT:**

   1. At all times material to this indictment, The Bancorp Bank was a financial institution the deposits of which were insured by the Federal Deposit Insurance Corporation, Certificate Number 35444.

   2. From in or about May 2006 through on or about February 19, 2009, in the Eastern District of Pennsylvania, and elsewhere, defendant

### GEORGE BARNARD

knowingly executed, attempted to execute, and aided and abetted the execution of, a scheme to defraud The Bancorp Bank and to obtain monies owned by and under the care, custody, and control of The Bancorp Bank by means of false and fraudulent pretenses, representations, and promises.

### THE SCHEME

   3. Paragraphs 1 through 5 and 10 through 12 of Counts One through Twenty-Four are incorporated here.

   4. In order to qualify for a loan and induce The Bancorp Bank to issue a mortgage loan so that defendant GEORGE BARNARD could purchase and improve the home at 221 65th Street, Avalon, New Jersey that he had already contracted to purchase, defendant BARNARD caused to be prepared and submitted to The Bancorp Bank various documents, including documents that defendant BARNARD knew were false, in an effort to falsely inflate his income and lead The Bancorp Bank to believe that defendant BARNARD's cash flow and net worth were greater than they were.

5.     Defendant GEORGE BARNARD signed and caused his spouse, K.B., to sign, all necessary paperwork required by the lender, including the HUD-1 Settlement Statement and the mortgage note, in order to induce The Bancorp Bank to wire the loan proceeds for defendant BARNARD's purchase of 221 65th Street, Avalon, New Jersey.

6.     On or about May 24, 2006, defendant GEORGE BARNARD signed an agreement of sale to purchase real property located at 221 65th Street, Avalon, New Jersey, for approximately $1,975,000.

7.     On or about May 24, 2006, defendant GEORGE BARNARD caused a wire transfer in the amount of approximately $10,000 to be made from CFMC's account at The Bancorp Bank in Wilmington, Delaware, ending in 1395 to PANJ Abstract's escrow account at The Bancorp Bank in Wilmington, Delaware, ending in 8813.

8.     On or about May 24, 2006, defendant GEORGE BARNARD caused a check in the amount of approximately $10,000, representing a portion of defendant BARNARD's down payment for the purchase of 221 65th Street, Avalon, New Jersey, to be issued as check number 17659 from PANJ Abstract's escrow account ending in 8813 at The Bancorp Bank and mailed from PANJ Abstract's office in the Eastern District of Pennsylvania to Ferguson Dechert Real Estate in New Jersey.

9.     In or about June 2006, defendant GEORGE BARNARD submitted an application to The Bancorp Bank (operating through its affinity and doing business as, "Philadelphia Private Bank"), to The Bancorp Bank's commercial lending office in Warminster, Pennsylvania, for a $3,445,000 loan to purchase and improve a luxury home located at 221 65th Street, Avalon, New Jersey.

10.     On or about June 15, 2006, defendant GEORGE BARNARD caused a check in the amount of approximately $180,000, representing the remainder of defendant BARNARD's down payment for the purchase of 221 65th Street, Avalon, New Jersey, to be issued as check number 17718 from PANJ Abstract's escrow account ending in 8813 at The Bancorp Bank, and mailed from PANJ Abstract's office in the Eastern District of Pennsylvania to Ferguson Dechert Real Estate in New Jersey.

11.     On or before July 26, 2006, defendant GEORGE BARNARD provided and caused to be provided to The Bancorp Bank a false 2003 IRS Form 1040 income tax return and related schedules that defendant BARNARD represented and caused to be represented as a copy of the genuine joint return and related schedules of defendant BARNARD and K.B., which falsely inflated the income defendant BARNARD had declared to the IRS for tax year 2003 by approximately $350,000, by falsely inflating the income defendant BARNARD received from PANJ Abstract by approximately $350,000.

12.     On or before July 26, 2006, defendant GEORGE BARNARD provided and caused to be provided to The Bancorp Bank a false 2004 IRS Form 1040 income tax return and related schedules that defendant BARNARD represented and caused to be represented as a copy of the genuine joint return and related schedules of defendant BARNARD and K.B., which falsely inflated the income defendant BARNARD had declared to the IRS for tax year 2004 by approximately $600,000, by falsely inflating the income defendant BARNARD received from PANJ Abstract by approximately $600,000.

13.     On or before July 26, 2006, defendant GEORGE BARNARD provided and caused to be provided to The Bancorp Bank a false 2005 IRS Form 1040 income tax return and related schedules that defendant BARNARD represented and caused to be represented as a

copy of the genuine joint return and related schedules of defendant BARNARD and K.B., which falsely inflated the income defendant BARNARD had declared to the IRS for tax year 2005 by approximately $600,000, by falsely inflating the income defendant BARNARD received from PANJ Abstract by approximately $600,000.

14.     On or before July 26, 2006, defendant GEORGE BARNARD provided and caused to be provided to The Bancorp Bank a false 2005 IRS Form 1120S corporate income tax return and related schedules that defendant BARNARD represented and caused to be represented as a copy of the genuine tax return and related schedules of PANJ Abstract, which falsely inflated the income that defendant BARNARD had declared to the IRS was earned by PANJ Abstract by approximately $600,000.

15.     On or about July 26, 2006, at the office of PANJ Abstract in Folsom, Pennsylvania, defendant GEORGE BARNARD signed and caused K.B. to sign the HUD-1 Settlement Statement for the purchase of the real property located at 221 65th Street, Avalon, New Jersey for the contract sales price of approximately $1,975,000.

16.     On or about July 26, 2006, at the office of PANJ Abstract in Folsom, Pennsylvania, defendant GEORGE BARNARD signed and caused K.B. to sign a mortgage note in the amount of approximately $3,280,000, granting The Bancorp Bank a security interest in 221 65th Street, Avalon, New Jersey.

17.     On or about July 26, 2006, defendant GEORGE BARNARD caused a check in the amount of approximately $650,000 to be issued as check number 18921 from PANJ Abstract's escrow account ending in 8813 at The Bancorp Bank to Crest Savings Bank in Wildwood, New Jersey, to satisfy an existing mortgage on 221 65th Street, Avalon, New Jersey.

18.     On or about July 26, 2006, defendant GEORGE BARNARD caused a check in the amount of approximately $732,618 to be issued as check number 18922 from PANJ Abstract's escrow account ending in 8813 at The Bancorp Bank to Sun National Bank in Vineland, New Jersey to satisfy an existing mortgage on 221 65th Street, Avalon, New Jersey.

19.     On or about July 26, 2006, defendant GEORGE BARNARD caused The Bancorp Bank to issue a credit memo for approximately $1,580,000 in loan proceeds to PANJ Abstract's escrow account ending in 8813 at The Bancorp Bank in Wilmington, Delaware.

20.     On or before February 19, 2009, defendant GEORGE BARNARD applied to The Bancorp Bank for a renewal of the loan he had obtained to purchase and improve 221 65th Street, Avalon, New Jersey.  In order to induce The Bancorp Bank to approve his loan renewal request, defendant BARNARD provided and caused to be provided to The Bancorp Bank a false personal financial statement dated April 30, 2008 and a false 2006 IRS Form 1040 income tax return and related schedules that defendant BARNARD represented and caused to be represented as a copy of the genuine joint return and related schedules of defendant BARNARD and K.B., which falsely inflated the income defendant BARNARD had declared to the IRS for tax year 2005 by approximately $300,000, by falsely inflating the income defendant BARNARD received from PANJ Abstract by approximately $300,000.

All in violation of Title 18, United States Code, Sections 1344 and 2.

## COUNT TWENTY-SIX

**THE GRAND JURY FURTHER CHARGES THAT:**

1.      At all times material to this indictment, Commerce Bank was a financial institution the deposits of which were insured by the Federal Deposit Insurance Corporation, Certificate Number 21140.

2.      At all times material to this indictment, TD Bank was a financial institution the deposits of which were insured by the Federal Deposit Insurance Corporation, Certificate Number 18409.

3.      On or about March 23, 2006, defendant GEORGE BARNARD established and registered a limited liability company, Olivia Grace Sport Fishing, LLC, in New Jersey. At all times material to this indictment, defendant BARNARD was the sole owner of Olivia Grace Sport Fishing, LLC.

4.      On or about May 31, 2008, Commerce Bank merged with TD Bank.

5.      From in or about December 2006 through on or about March 16, 2007, in the Eastern District of Pennsylvania, the District of New Jersey, and elsewhere, defendant

### GEORGE BARNARD

knowingly executed, attempted to execute, and aided and abetted the execution of, a scheme to defraud Commerce Bank and to obtain monies owned by and under the care, custody, and control of Commerce Bank by means of false and fraudulent pretenses, representations, and promises.

### THE SCHEME

6.      Paragraphs 1 through 5 and 10 through 12 of Counts One through Twenty-Four are incorporated here.

7.      Between on or about December 20, 2006 and on or about February 28, 2007, defendant GEORGE BARNARD caused to be prepared and submitted to Commerce Bank in Cherry Hill, New Jersey, various documents, including documents that defendant BARNARD knew were false, in order to qualify to a loan and induce Commerce Bank to issue a ship mortgage loan so that defendant BARNARD could purchase the 2006 Vicem 54-foot sport fishing boat for approximately $912,500 from Down East Yachts, LLC, in Huntington, NY..

8.      Defendant GEORGE BARNARD signed all necessary paperwork required by the lenders, including the loan and security agreement, the loan guaranty, and the mortgage note, in order to induce Commerce Bank to distribute the loan proceeds for defendant BARNARD's purchase of a 2006 Vicem 54-foot sport fishing boat from Down East Yachts, LLC.

9.      On or about December 20, 2006, defendant GEORGE BARNARD caused his accountant, B.H. to transmit via facsimile from the Eastern District of Pennsylvania a false financial statement dated September 30, 2006 that overstated CFMC's income by approximately $250,000 and overstated CFMC's cash assets by approximately $600,000 and a false affirmation by B.H. that, based on B.H.'s purported audit of CFMC using "Generally Accepted Auditing Standards" the CFMC financial statement dated September 30, 2006 fairly presented the financial position of CFMC as of that date, which was provided to Commerce Bank.

10.      On or about December 26, 2006, defendant GEORGE BARNARD signed a contract, dated December 21, 2006, to purchase a yacht, that is, a 2006 Vicem 54-foot sport fishing boat, for approximately $912,500 from Down East Yachts, LLC of Huntington, New York. Pursuant to the terms of the agreement, defendant BARNARD agreed to trade in his old yacht, a 2005 36-foot Jersey Cape sport fishing boat.

34

11.     On or before January 19, 2007, defendant GEORGE BARNARD provided and caused to be provided to Commerce Bank a false 2004 IRS Form 1040 income tax return and related schedules that defendant BARNARD represented and caused to be represented as a copy of the genuine joint return and related schedules of defendant BARNARD and K.B., which falsely inflated the income defendant BARNARD had declared to the IRS for tax year 2004 by approximately $600,000, by falsely inflating the income defendant BARNARD received from PANJ Abstract by approximately $600,000.

12.     On or before January 19, 2007, defendant GEORGE BARNARD provided and caused to be provided to Commerce Bank a false 2005 IRS Form 1040 income tax return and related scheduled that defendant BARNARD represented and caused to be represented as a copy of the genuine joint return and related schedules of defendant BARNARD and K.B., which falsely inflated the income defendant BARNARD had declared to the IRS for tax year 2005 by approximately $600,000, by falsely inflating the income defendant BARNARD received from PANJ Abstract by approximately $600,000.

13.     On or about January 19, 2007, defendant GEORGE BARNARD provided and caused to be provided to Commerce Bank a false 2004 IRS Form 1120S corporate income tax return and related schedules that defendant BARNARD represented and caused to be represented as a copy of the genuine tax return and related schedules of PANJ Abstract, which falsely inflated the income that defendant BARNARD had declared to the IRS was earned by PANJ Abstract by approximately $600,000.

14.     On or about January 19, 2007, defendant GEORGE BARNARD provided and caused to be provided to Commerce Bank a false 2005 IRS Form 1120S corporate income tax return and related schedules that defendant BARNARD represented and caused to be

represented as a copy of the genuine tax return and related schedules of PANJ Abstract, which falsely inflated the income that defendant BARNARD had declared to the IRS was earned by PANJ Abstract by approximately $600,000.

15.    On or before January 22, 2007, defendant GEORGE BARNARD provided and caused to be provided to Commerce Bank a false 2005 IRS Form 1120 corporate income tax return and related schedules that defendant BARNARD represented and caused to be represented as a copy of the genuine tax return and related schedules of CFMC, which falsely inflated the income that defendant BARNARD had declared to the IRS was earned by CFMC by approximately $100,000.

16.    On or about February 28, 2007, at the office of Commerce Bank in Cherry Hilly, New Jersey, defendant GEORGE BARNARD signed on behalf of Olivia Grace Sport Fishing, LLC a "First Preferred Ship Mortgage Agreement" and "First Preferred Ship Mortgage" granting Commerce bank a security interest in a 2006 Vicem 54-foot sport fishing boat.

17.    On or about February 28, 2007, defendant GEORGE BARNARD caused Commerce Bank to wire approximately $477,500 in loan proceeds from a Commerce Bank account ending in 9999 in New Jersey to Down East Yachts LLC's bank account ending in 6186 at Signature Bank in New York.

18.    On or about February 28, 2007, defendant GEORGE BARNARD caused Commerce Bank to issue a check made payable to Olivia Grace Sport Fishing, LLC in the amount of approximately $49,055.

19.     On or about March 16, 2007, defendant GEORGE BARNARD caused the approximately $49,055 check from Commerce Bank to be deposited into Olivia Grace Sport Fishing, LLC's bank account ending in 9327 at Commerce Bank in New Jersey.

All in violation of Title 18, United States Code, Sections 1344 and 2.

## COUNT TWENTY-SEVEN

**THE GRAND JURY FURTHER CHARGES THAT:**

1.      At all times material to this indictment, Stonebridge Bank was a financial institution based in West Chester, Pennsylvania, the deposits of which were insured by the Federal Deposit Insurance Corporation, Certificate Number 35077.

2.      From in or about December 2007 through on or about December 8, 2008, in the Eastern District of Pennsylvania and elsewhere, defendant

### GEORGE BARNARD

knowingly executed, attempted to execute, and aided and abetted the execution of, a scheme to defraud Stonebridge Bank and to obtain monies owned by and under the care, custody, and control of Stonebridge Bank by means of false and fraudulent pretenses, representations, and promises.

### THE SCHEME

3.      Paragraphs 1 through 5 and 10 through 12 of Counts One through Twenty-Four are incorporated here.

4.      On or about December 8, 2007, defendant GEORGE BARNARD signed an agreement of sale to purchase a luxury home located at 39 E. 25th Street, Avalon, New Jersey, for approximately $2,000,000 from the seller, M.S.

5.      In or about December 2007, defendant GEORGE BARNARD submitted an application to Stonebridge Bank in West Chester, Pennsylvania, for a loan of approximately $2,480,000 to purchase 39 E. 25th Street, Avalon, New Jersey.  In the application, defendant BARNARD falsely inflated the purchase price and falsely claimed that the purchase price was approximately $3,100,000.

38

6.      In order to qualify for a loan and induce Stonebridge Bank to issue a mortgage loan so that defendant GEORGE BARNARD could purchase the home located at 39 East 25th Street, Avalon, New Jersey that he had already contracted to purchase, defendant BARNARD caused to be prepared and submitted to Stonebridge Bank various documents, including documents that defendant BARNARD knew were false, in an effort to falsely inflate his income and lead Stonebridge Bank to believe that defendant BARNARD's cash flow and net worth were greater than they were.

7.      Defendant GEORGE BARNARD directed that one of the title companies he owned, Nationwide Land Transfer, would serve as the title agent for his purchase of 39 East 25th Street, Avalon, New Jersey.

8.      On or before December 27, 2007, defendant GEORGE BARNARD provided and caused to be provided to Stonebridge Bank a false 2004 IRS Form 1120S corporate income tax return and related schedules that defendant BARNARD represented and caused to be represented as a copy of the genuine tax return and related schedules of PANJ Abstract, which falsely inflated the income that defendant BARNARD had declared to the IRS was earned by PANJ Abstract by approximately $600,000.

9.      On or before December 27, 2007, defendant GEORGE BARNARD provided and caused to be provided to Stonebridge Bank a false 2005 IRS Form 1120S corporate income tax return and related schedules that defendant BARNARD represented and caused to be represented as a copy of the genuine tax return and related schedules of PANJ Abstract, which falsely inflated the income that defendant BARNARD had declared to the IRS was earned by PANJ Abstract by approximately $600,000.

10.     On or before December 27, 2007, defendant GEORGE BARNARD provided and caused to be provided to Stonebridge Bank a false 2006 IRS Form 1120S corporate income tax return and related schedules that defendant BARNARD represented and caused to be represented as a copy of the genuine tax return and related schedules of PANJ Abstract, which falsely inflated the income that defendant BARNARD had declared to the IRS was earned by PANJ Abstract by approximately $500,000.

11.     On or before December 27, 2007, defendant GEORGE BARNARD provided and caused to be provided to Stonebridge Bank a false 2005 IRS Form 1120 corporate income tax return and related schedules that defendant BARNARD represented and caused to be represented as a copy of the genuine tax return and related schedules of CFMC, which falsely inflated the income that defendant BARNARD had declared to the IRS was earned by CFMC by approximately $100,000.

12.     On or before December 27, 2007, defendant GEORGE BARNARD provided and caused to be provided to Stonebridge Bank a false 2006 IRS Form 1120S corporate income tax return and related schedules that defendant BARNARD represented and caused to be represented as a copy of the genuine tax return and related schedules of CFMC, which falsely inflated the income that defendant BARNARD had declared to the IRS was earned by CFMC by approximately $150,000.

13.     On or before December 27, 2007, defendant GEORGE BARNARD provided and caused to be provided to Stonebridge Bank a false 2005 IRS Form 1040 income tax return and related schedules that defendant BARNARD represented and caused to be represented as a copy of the genuine joint return and related schedules of defendant BARNARD and K.B., which falsely inflated the income defendant BARNARD had declared to the IRS for tax year

40

2005 by approximately $600,000, by falsely inflating the income defendant BARNARD received from PANJ Abstract by approximately $600,000.

14.     On or before December 27, 2007, defendant GEORGE BARNARD provided and caused to be provided to Stonebridge Bank a false 2006 IRS Form 1040 income tax return and related schedules that defendant BARNARD represented and caused to be represented as a copy of the genuine joint return and related schedules of defendant BARNARD and K.B., which falsely inflated the income defendant BARNARD had declared to the IRS for tax year 2006 by approximately $500,000, by falsely inflating the income defendant BARNARD received from PANJ Abstract by approximately $500,000.

15.     On or about January 14, 2008, defendant GEORGE BARNARD established and registered a limited liability company, 39 E. 25th Street, LLC, in New Jersey, with the intention that upon defendant BARNARD's purchase of the property, title would be held in the name of 39 E. 25th Street, LLC. At all times material to this indictment, defendant BARNARD was the sole owner of 39 E. 25th Street, LLC.

16.     On or about February 15, 2008, defendant GEORGE BARNARD caused Nationwide Land Transfer to prepare two different HUD-1 Settlement Statements for his purchase of 39 East 25th Street, Avalon, New Jersey – a true one for the seller showing the correct sales price of approximately $2,000,000 and a false one for Stonebridge Bank contained the following false statements: (a) a falsely-inflated sales price of approximately $3,100,000; (b) that defendant BARNARD was contributing cash from borrower in the amount of approximately $574,924; (c) that the seller would receive approximately $2,586,907; (d) that a realty transfer fee of approximately $34,988 would be paid from the loan proceeds; (e) that a mansion tax fee of

approximately $31,000 would be paid from the loan proceeds; and (f) that gross income tax of approximately $62,000 would be paid from the loan proceeds.

17.     On or about February 15, 2008, at the office of Nationwide Land Transfer in Folsom, Pennsylvania, defendant GEORGE BARNARD, on behalf of 39 E. 25th Street, LLC, signed both HUD-1 Settlement Statements prepared by Nationwide Land Transfer for his purchase of 39 East 25th Street, Avalon, New Jersey – the true one for the seller showing the correct sales price of approximately $2,000,000 and the false one for Stonebridge Bank.

18.     On or about February 15, 2008, at the office of Nationwide Land Transfer in Folsom, Pennsylvania, defendant GEORGE BARNARD, on behalf of 39 E. 25th Street, LLC, signed a business loan agreement to borrow approximately $2,480,000 from Stonebridge Bank

19.     On or about February 15, 2008, defendant GEORGE BARNARD caused a "Treasurer's Check" in the amount of approximately $2,480,000, to be issued by Stonebridge Bank in West Chester, Pennsylvania, made payable to Nationwide Land Transfer, representing the proceeds of defendant BARNARD's $2,480,000 loan from Stonebridge Bank for the purchase of 39 E. 25th Street, Avalon, New Jersey.

20.     On or about February 15, 2008, defendant GEORGE BARNARD caused Nationwide Land Transfer to deposit the $2,480,000 check from Stonebridge Bank into Nationwide Land Transfer's escrow account ending in 9191 at The Bancorp Bank.

21.     On or about March 28, 2008, defendant GEORGE BARNARD caused Nationwide Land Transfer to wire approximately $482,979 of the proceeds of the $2,480,000 loan from Stonebridge Bank from Nationwide Land Transfer's escrow account ending in 9191 at The Bancorp Bank to defendant BARNARD's TD Bank account ending in 0166.

22.     Between March 28, 2008 and December 28, 2008, defendant GEORGE BARNARD caused Nationwide Land Transfer to fail to record with the County of Cape May, New Jersey, the deed for defendant BARNARD's purchase of 39 E. 25th Street, Avalon, New Jersey and to fail to pay the necessary transfer fees and taxes, which the HUD-1 Settlement Statement had indicated would be paid.

23.     On or about December 8, 2008, defendant GEORGE BARNARD completed, signed, and filed with Cape May County, New Jersey, a forged, false, and fraudulent deed, "Affidavit of Consideration for Use by Seller" and "Seller's Residency Certification / Exemption" that falsely reflected that on February 15, 2008, defendant BARNARD, through 39 E. 25th Street, LLC, had purchased 39 E. 25th Street, Avalon, New Jersey, from the seller, M.S., for only $10, and which contained the forged signatures of M.S. and a representative of M.S., as well as a notary stamp and notary signature falsely attesting that the signatures were notarized in Folsom, Pennsylvania.

All in violation of Title 18, United States Code, Sections 1344 and 2.

## COUNT TWENTY-EIGHT

**THE GRAND JURY FURTHER CHARGES THAT:**

1.　　At all times material to this indictment, Sturdy Savings Bank was a financial institution based in Stone Harbor, New Jersey, the deposits of which were insured by the Federal Deposit Insurance Corporation, Certificate Number 28788.

2.　　From in or about February 2008 through on or about February 1, 2011, in the Eastern District of Pennsylvania and elsewhere, defendant

### GEORGE BARNARD

knowingly executed, attempted to execute, and aided and abetted the execution of, a scheme to defraud Sturdy Savings Bank and to obtain monies owned by and under the care, custody, and control of Sturdy Savings Bank by means of false and fraudulent pretenses, representations, and promises.

### THE SCHEME

3.　　Paragraphs 1 through 5 and 10 through 12 of Counts One through Twenty-Four are incorporated here.

4.　　On or about February 11, 2008, defendant GEORGE BARNARD signed an agreement of sale to purchase a luxury home located at 670 First Avenue, Avalon, New Jersey, for approximately $3,400,000.

5.　　In order to qualify for a loan and induce Sturdy Savings Bank to issue a mortgage loan so that defendant GEORGE BARNARD could purchase and improve the luxury home located at 670 First Avenue, Avalon, New Jersey that he had already contracted to purchase, defendant BARNARD caused to be prepared and submitted to Sturdy Savings Bank various documents, including documents that defendant BARNARD knew were false, in an

effort to falsely inflate his income and lead Sturdy Savings Bank to believe that defendant

BARNARD's cash flow and net worth were greater than they were.

      6.      On or about April 14, 2008, defendant GEORGE BARNARD applied to

Sturdy Savings Bank in Stone Harbor, New Jersey, for a loan of approximately $5,200,000 to

purchase and improve 670 First Avenue, Avalon, New Jersey.

      7.      On or about April 14, 2008, defendant GEORGE BARNARD provided

and caused to be provided to Sturdy Savings Bank a false 2006 IRS Form 1040 income tax

return signed by defendant BARNARD and related schedules that defendant BARNARD

represented and caused to be represented as a copy of the genuine joint return and related

schedules of defendant BARNARD and K.B., which falsely inflated the income defendant

BARNARD had declared to the IRS for tax year 2006 by approximately $500,000.

      8.      On or about April 14, 2008, defendant GEORGE BARNARD provided

and caused to be provided to Sturdy Savings Bank a false 2004 IRS Form 1120S corporate

income tax return and related schedules that defendant BARNARD represented and caused to be

represented as a copy of the genuine tax return and related schedules of PANJ Abstract, which

falsely inflated the income that defendant BARNARD had declared to the IRS was earned by

PANJ Abstract by approximately $600,000.

      9.      On or about April 14, 2008, defendant GEORGE BARNARD provided

and caused to be provided to Sturdy Savings Bank a false 2005 IRS Form 1120S corporate

income tax return and related schedules that defendant BARNARD represented and caused to be

represented as a copy of the genuine tax return and related schedules of PANJ Abstract, which

falsely inflated the income that defendant BARNARD had declared to the IRS was earned by

PANJ Abstract by approximately $600,000.

10.     On or about April 14, 2008, defendant GEORGE BARNARD provided and caused to be provided to Sturdy Savings Bank a false 2006 IRS Form 1120S corporate income tax return and related schedules that defendant BARNARD represented and caused to be represented as a copy of the genuine tax return and related schedules of PANJ Abstract, which falsely inflated the income that defendant BARNARD had declared to the IRS was earned by PANJ Abstract by approximately $500,000.

11.     On or about April 14, 2008, defendant GEORGE BARNARD provided and caused to be provided to Sturdy Savings Bank a false 2005 IRS Form 1120 corporate income tax return and related schedules that defendant BARNARD represented and caused to be represented as a copy of the genuine tax return and related schedules of CFMC, which falsely inflated the income that defendant BARNARD had declared to the IRS was earned by CFMC by approximately $100,000.

12.     On or about April 14, 2008, defendant GEORGE BARNARD provided and caused to be provided to Sturdy Savings Bank a false 2006 IRS Form 1120 corporate income tax return and related schedules that defendant BARNARD represented and caused to be represented as a copy of the genuine tax return and related schedules of CFMC, which falsely inflated the income that defendant BARNARD had declared to the IRS was earned by CFMC by approximately $150,000.

13.     On or about April 14, 2008, defendant GEORGE BARNARD sent an email from his email address at Nationwide Land Transfer in Folsom, Pennsylvania, to both K.D. at Sturdy Savings Bank in New Jersey and defendant BARNARD's accountant, B.H., in the Eastern District of Pennsylvania, asking K.D. to reply with any items that Sturdy Savings Bank

46

required B.H. to clarify in order for Sturdy Savings Bank's loan committee to approve defendant BARNARD's loan request.

      14.    On or about April 29, 2008, defendant GEORGE BARNARD caused a wire transfer of approximately $100,000, representing his initial down payment towards the purchase of 670 First Avenue, Avalon, New Jersey, to be sent from defendant BARNARD's account at The Bancorp Bank in Wilmington, Delaware ending in 0016 to the account of Ferguson Dechert Real Estate at Sturdy Savings Bank in Stone Harbor, New Jersey, ending in 2381.

      15.    On or before June 30, 2008, defendant GEORGE BARNARD provided and caused to be provided to Sturdy Savings Bank a false 2007 IRS Form 1120S corporate income tax return and related schedules that defendant BARNARD represented and caused to be represented as a copy of the genuine tax return and related schedules of PANJ Abstract, which falsely inflated the income that defendant BARNARD had declared to the IRS was earned by PANJ Abstract by approximately $300,000.

      16.    On or about August 27, 2008, defendant GEORGE BARNARD established and registered a limited liability company, 670 First Avenue, LLC, in New Jersey, with the intention that upon defendant BARNARD's purchase of the property, title would be held in the name of 670 First Avenue, LLC. At all times material to this indictment, defendant BARNARD was the sole owner of 670 First Avenue, LLC.

      17.    On or about September 2, 2008, defendant GEORGE BARNARD sent an e-mail from his email address at Nationwide Land Transfer in Folsom, Pennsylvania, to K.D. at Sturdy Savings Bank in New Jersey in which defendant BARNARD falsely represented that he

receives approximately $100,000 per month in income from Nationwide Land Transfer, Tri-State Land Transfer, and CFMC, for a total of approximately $300,000 per month in income.

18.     On or about November 3, 2008, defendant GEORGE BARNARD sent an email from his email address at Nationwide Land Transfer in Folsom, Pennsylvania to K.D. at Sturdy Savings Bank in New Jersey with a copy to defendant BARNARD's email address at CFMC in Folsom, Pennsylvania, in which defendant BARNARD falsely claimed that he had sold his property at 209 Kedron Avenue, Folsom, Pennsylvania three days earlier and agreed to provide K.D. with a copy of the fully-executed HUD-1 Settlement Statement.

19.     On or about November 4, 2008, defendant GEORGE BARNARD sent an e-mail from his email address at Nationwide Land Transfer in Folsom, Pennsylvania, to K.D. of Sturdy Savings Bank in New Jersey, in which defendant BARNARD falsely claimed that defendant BARNARD had obtained the approximately $291,449.33 that defendant BARNARD needed to supply for his purchase of 670 First Avenue, Avalon, New Jersey, from defendant BARNARD's sale of 209 Kedron Avenue, Folsom, Pennsylvania.

20.     On or about November 5, 2008, defendant GEORGE BARNARD sent an e-mail from his email address at Nationwide Land Transfer in Folsom, Pennsylvania to K.D. of Sturdy Savings Bank in New Jersey, defendant BARNARD's employee, K.L., and others, in which defendant BARNARD instructed K.L. to both wire the fictitious proceeds of defendant BARNARD's non-existent sale of 209 Kedron Avenue, Folsom, Pennsylvania, to defendant BARNARD's Commerce Bank account, send all of the email recipients a copy of the wire transfer confirmation report, and obtain a confirmation from Commerce Bank of the deposit of the funds, and to which defendant BARNARD attached a false HUD-1 Settlement Statement that was stamped "Final" and signed by defendant BARNARD that falsely reflected: (a) that

48

defendant BARNARD had sold 209 Kedron Avenue, Folsom, Pennsylvania on or about October 31, 2008; (b) that one of defendant BARNARD'S Title Companies, Tri State Land Transfer, LLC had served as Title Agent for the sale; (c) that the closing for the transaction had occurred at the office of Tri State Land Transfer, LLC – 209 Kedron Avenue in Folsom, Pennsylvania, and (d) that defendant BARNARD had received approximately $396,445.81 in proceeds from the sale of 209 Kedron Avenue.

      21.    On or about November 6, 2008, defendant GEORGE BARNARD caused Nationwide Land Transfer to wire approximately $396,445.81 from its account at The Bancorp Bank in Wilmington, Delaware, ending in 9191 to defendant BARNARD's Commerce Bank account in Aston, Pennsylvania ending in 0166.

      22.    On or about November 6, 2008, defendant GEORGE BARNARD caused Commerce Bank in Aston, Pennsylvania to fax a copy of defendant BARNARD's Commerce Bank statement for his account ending in 0166 to defendant BARNARD in Folsom, Pennsylvania.

      23.    On or about November 6, 2008, defendant GEORGE BARNARD sent an email from his email address at Nationwide Land Transfer in Folsom, Pennsylvania to K.D. of Sturdy Savings Bank in New Jersey, to which defendant BARNARD attached a copy of the statement for his Commerce Bank account ending in 0166 and a copy of a printout from Commerce Bank that reflected that approximately $396,445.81 had been wired into defendant BARNARD's Commerce Bank account ending in 0166.

      24.    On or about November 7, 2008, defendant GEORGE BARNARD sent an email from his email address at Nationwide Land Transfer in Folsom, Pennsylvania to his

employee, K.L., authorizing K.L. to return the approximately $396,445.81 to Nationwide Land Transfer's account at The Bancorp Bank in Wilmington, Delaware, ending in 9191.

25.     On or about November 10, 2008, defendant GEORGE BARNARD caused the wire transfer of approximately $396,445.81 from defendant BARNARD's Commerce Bank account ending in 0166 in Aston, Pennsylvania, to Nationwide Land Transfer's account at The Bancorp Bank in Wilmington, Delaware, ending in 9191.

26.     On or about December 10, 2008, defendant GEORGE BARNARD caused transfers of funds totaling approximately $146,438 that two of defendant BARNARD'S Title Companies, PANJ Abstract and PANJ Land Transfer held in trust for others to be made into the operating account of Nationwide Land Transfer at The Bancorp Bank in Wilmington, Delaware, ending in 9183, which defendant BARNARD subsequently used to fund the down payment he was required to make to purchase 670 First Avenue, Avalon, New Jersey.

27.     On or about December 10, 2008, defendant GEORGE BARNARD caused Nationwide Land Transfer to wire approximately $145,772 from its operating account at The Bancorp Bank in Wilmington, Delaware, ending in 9183 to Seaboard Title Agency's account ending in 9440 at Sturdy Savings Bank in Stone Harbor, New Jersey, representing defendant BARNARD's cash due from borrower for the purchase of 670 First Avenue, Avalon, New Jersey.

28.     On or about December 10, 2008, at the office of Seaboard Title Agency in Avalon, New Jersey, defendant GEORGE BARNARD signed a final uniform residential loan application for a mortgage loan from Sturdy Savings Bank in the amount of approximately $4,520,000 for the purchase and improvement of 670 First Avenue, Avalon, New Jersey, in which defendant BARNARD claimed falsely-inflated monthly business income from Defendant

BARNARD'S Title Companies of approximately $65,282 and falsely claimed that he had approximately $396,446 cash available in an account at Commerce Bank ending in 0166 that defendant BARNARD falsely represented to be the proceeds from the sale of 209 Kedron Avenue.

29.     On or about December 10, 2008, at the office of Seaboard Title Agency in Avalon, New Jersey, defendant GEORGE BARNARD signed a mortgage note in the amount of approximately $4,520,000, granting Sturdy Savings Bank a security interest in 670 First Avenue, Avalon, New Jersey.

30.     On or about December 10, 2008, defendant GEORGE BARNARD caused Sturdy Savings Bank to approve his loan request for an approximately $4,520,000 mortgage to purchase and improve 670 First Avenue, Avalon, New Jersey.

31.     On or about December 10, 2008, defendant GEORGE BARNARD caused a cashier's check in the amount of approximately $2,770,000 to be issued by Sturdy Savings Bank and provided to Seaboard Title Agency, representing the initial disbursal of defendant BARNARD's loan from Sturdy Savings Bank to purchase and improve 670 First Avenue, Avalon, New Jersey.

32.     On or about January 30, 2009, defendant GEORGE BARNARD caused Sturdy Savings Bank to disburse approximately $250,000 of the loan proceeds from defendant BARNARD's loan from Sturdy Savings Bank to purchase and improve 670 First Avenue, Avalon, New Jersey.

33.     On or about February 25, 2009, at the office of Seaboard Title Agency in Avalon, New Jersey, defendant GEORGE BARNARD signed another HUD-1 Settlement Statement in connection with the approximately $4,520,000 loan he had obtained from Sturdy

Savings Bank for the purchase and improvement of 670 First Avenue, Avalon, New Jersey, in order to obtain a disbursal of approximately $350,000 of the loan proceeds.

34.     On or about May 8, 2009, defendant GEORGE BARNARD caused Sturdy Savings Bank to disburse approximately $350,000 of the loan proceeds from defendant BARNARD's loan from Sturdy Savings Bank to purchase and improve 670 First Avenue, Avalon, New Jersey

35.     On or about June 25, 2009, defendant GEORGE BARNARD caused Sturdy Savings Bank to disburse approximately $300,000 of the loan proceeds from defendant BARNARD's loan from Sturdy Savings Bank to purchase and improve 670 First Avenue, Avalon, New Jersey

36.     On or about July 28, 2009, at the office of Seaboard Title Agency in Avalon, New Jersey, defendant GEORGE BARNARD signed another HUD-1 Settlement Statement in connection with the approximately $4,520,000 loan he had obtained from Sturdy Savings Bank for the purchase and improvement of 670 First Avenue, Avalon, New Jersey, and caused Sturdy Savings bank to disburse approximately $150,000 of the loan proceeds.

37.     On or about October 6, 2009, defendant GEORGE BARNARD caused Sturdy Savings Bank to disburse approximately $100,000 of the loan proceeds from defendant BARNARD's loan from Sturdy Savings Bank to purchase and improve 670 First Avenue, Avalon, New Jersey

38.     On or about February 1, 2011, at the office of Seaboard Title Agency in Avalon, New Jersey, defendant GEORGE BARNARD signed another HUD-1 Settlement Statement in connection with the approximately $4,520,000 loan he had obtained from Sturdy

Savings Bank for the purchase and improvement of 670 First Avenue, Avalon, New Jersey, and caused Sturdy Savings Bank to disburse approximately $250,000 of the loan proceeds.

All in violation of Title 18, United States Code, Sections 1344 and 2.

## COUNT TWENTY-NINE

**THE GRAND JURY FURTHER CHARGES THAT:**

1.　　At all times material to this indictment, Customers Bank was a financial institution the deposits of which were insured by the Federal Deposit Insurance Corporation, Certificate Number 34444.

2.　　From in or about March 2012 through in or about March 2013, CFMC was a direct mortgage lender based in Delaware County, Pennsylvania.

3.　　From in or about March 2012 through in or about March 2013, in the Eastern District of Pennsylvania and elsewhere, defendant

### GEORGE BARNARD

together and with David Fili, Jr., charged separately, knowingly executed, attempted to execute, and aided and abetted the execution of, a scheme to defraud Customers Bank and to obtain monies owned by and under the care, custody, and control of Customers Bank by means of false and fraudulent pretenses, representations, and promises.

### THE SCHEME

4.　　Paragraphs 1 through 13, 18 through 20, 32 through 36, 38, 42 through 46, 49, 50, and 56 of Counts One through Twenty-Four are incorporated here.

5.　　On or about March 12, 2012, defendant GEORGE BARNARD and David Fili Jr., acting on behalf of CFMC, signed a contract with Customers Bank pursuant to which Customers Bank agreed to provide a warehouse line of credit to CFMC for the purpose of enabling CFMC to issue mortgage loans.

6.　　In or about March 2012, defendant GEORGE BARNARD and David Fili, Jr. provided Guarantee and Surety Agreements (hereinafter the "Guarantees") to Customers

Bank that required defendant BARNARD and Fili to personally assume CFMC's repayment obligations under the warehouse agreement if CFMC became unable to meet the warehouse line of credit's repayment terms, and also provided false financial statements of CFMC that failed to list CFMC's additional liabilities caused by the ongoing fraud scheme, overstated CFMC's available cash and overstated the value of real estate listed on CFMC's balance sheet.

7.     At the time they entered into the agreement with Customers Bank and at all times that they sought and obtained advances on the Customers Bank warehouse line of credit, defendant GEORGE BARNARD and David Fili, Jr. failed to disclose to Customers Bank that defendant BARNARD and Fili had access to Park Avenue Abstract's bank accounts at PNC Bank.

8.     At all times that they sought and obtained advances on the Customers Bank warehouse line of credit, defendant GEORGE BARNARD and David Fili, Jr. failed to disclose to Customers Bank that defendant BARNARD and Fili were not using the Customers Bank warehouse line of credit advances to satisfy prior first mortgages related to the transactions identified in the Closing Protection Letters and were instead using the advances for a variety of purposes, including to pay their own personal expenses and to satisfy old first mortgages that had never been timely satisfied with loan proceeds relating to those transactions.

9.     In order to hide the existence of the scheme from Customers Bank and CFMC's individual clients, David Fili, Jr. also used some of the funds advanced by Customers Bank to make monthly mortgage payments on individual clients' first mortgages that Customers Bank and the individual clients had been led to believe had already been satisfied.

10.     In order to gain control over funds wired by Customers Bank on the warehouse line of credit for loans issued by CFMC as to which Park Avenue Abstract was not

the third-part settlement agent, defendant GEORGE BARNARD and David Fili, Jr. caused false

Closing Protection Letters and false wiring instructions to be sent to Customers Bank that falsely

listed Park Avenue Abstract as the title company and falsely listed a CFMC bank account at PNC

Bank over which defendant BARNARD and Fili had control as the escrow account into which

the warehouse line of credit advances should be wired.

        11.    On or about the following dates, in order to induce Customers Bank to

wire advances on the warehouse line of credit to a CFMC bank account at PNC Bank that they

controlled, defendant GEORGE BARNARD and David Fili, Jr. caused false Closing Protection

Letters and false wiring instructions to be uploaded electronically via the internet to Customers

Bank's Warehouse Lending department in connection with the following loans, which caused

Customers Bank to wire the following approximate warehouse advance amounts from a

Customers Bank account located in the Eastern District of Pennsylvania to a PNC Bank account

ending in 4102 located in the Eastern District of Pennsylvania:

| DATE | PROPERTY ADDRESS | PARK AVENUE ABSTRACT FILE # | WAREHOUSE ADVANCE AMOUNT |
|------|------------------|------------------------------|---------------------------|
| 2/15/13 | 125 Briarcliff Drive, Egg Harbor, NJ | NJPARK-716 | $338,102 |
| 2/21/13 | 36 Hilltop Terrace, Bloomingdale, NJ | NJPARK-726 | $270,284 |
| 2/22/13 | 198 Cobblestone lane, Westville, NJ | NJPARK-731 | $145,031 |
| 2/25/13 | 1011 Delaware Avenue, Havertown, PA | PAPARK-643 | $285.101 |
| 2/26/13 | 9 Coles Avenue, Cherry Hill, NJ | NJPARK-658 | $169,215 |
| 2/26/13 | 3408 Holyoke Road, Philadelphia, PA | NJPARK-682 | $185,798 |
| 2/26/13 | 204 E. Dorothys Way, Lincoln University, PA | PAPARK-611 | $353,116 |
| 2/27/13 | 1648 Whitehouse Road, Maple Glen, PA | PAPARK-623 | $378,806 |

| DATE | PROPERTY ADDRESS | PARK AVENUE ABSTRACT FILE # | WAREHOUSE ADVANCE AMOUNT |
|---|---|---|---|
| 2/27/13 | 77 Potter Street, Haddonfield, NJ | NJPARK-616 | $268,707 |
| 2/28/13 | 72 Colts Neck Drive, Sicklerville, NJ | NJPARK-711 | $145,141 |
| 3/04/13 | 907 Radclyffe Street, Bethlehem, PA | PAPARK-641 | $130,126 |
| 3/04/13 | 519 Stambridge Road, Morton, PA | PAPARK-628 | $183,759 |
| 3/05/13 | 400 Park Lane, Northfield, NJ | NJPARK-758 | $140,662 |
| 3/06/13 | 643 Mallard Road, Wayne, PA | PAPARK-607 | $383,257 |
| 3/07/13 | 503 Westerly Drive, Marlton, NJ | NJPARK-772 | $198,744 |
| 3/07/13 | 197 Alphano Road, Great Meadows, NJ | NJPARK-710 | $186,600 |
| 3/08/13 | 407 Degas Court, Williamstown, NJ | NJPARK-671 | $161,807 |
| 3/08/13 | 406 Schwenksville Road, Schwenksville, PA | PAPARK-604 | $132,976 |
| 3/08/13 | 529 Forrest Avenue, Houston, PA | PAPARK-634 | $146,211 |

12.     Defendant GEORGE BARNARD and David Fili, Jr. allowed the borrowers to execute mortgage documents in connection with the loans set forth above despite knowing that they intended to use the specific funds advanced by Customers Bank on each loan for purposes other than those disclosed to Customers Bank and the borrowers.

13.     By their actions, defendant GEORGE BARNARD and David Fili, Jr. caused Customers Bank to sustain an actual loss of over $2,500,000.

All in violation of Title 18, United States Code, Sections 1344 and 2.

## COUNT THIRTY

**THE GRAND JURY FURTHER CHARGES THAT:**

      1.     At all times material to this indictment, M&T Bank was a financial institution the deposits of which were insured by the Federal Deposit Insurance Corporation, Certificate Number 588.

      2.     From in or about March 2012 through in or about March 2013, CFMC was a direct mortgage lender based in Delaware County, Pennsylvania.

      3.     From in or about March 2012 through in or about March 2013, in the Eastern District of Pennsylvania and elsewhere, defendant

### GEORGE BARNARD

together and with David Fili, Jr., charged separately, knowingly executed, attempted to execute, and aided and abetted the execution of, a scheme to defraud M&T Bank and to obtain monies owned by and under the care, custody, and control of M&T Bank by means of false and fraudulent pretenses, representations, and promises.

### THE SCHEME

      4.     Paragraphs 1 through 13, 18 through 20, 32 through 36, 38, 42 through 46, 49, 50, 53, and 56 of Counts One through Twenty-Four are incorporated here.

      5.     Beginning in or about May 2012, defendant GEORGE BARNARD and David Fili, Jr. sold mortgages to M&T Bank that had been issued by CFMC, by misrepresenting those mortgages as "first mortgages," when as defendant GEORGE BARNARD and Fili then knew, they were in reality second mortgages because the then-existing first mortgages had not been satisfied.

6.    On or about the following dates, defendant GEORGE BARNARD and David Fili, Jr. caused the following loans to be sold by CFMC to M&T Bank, by providing false HUD-1 Settlement Statements and closing instructions and representing the loans as first mortgages, and without disclosing the fact that the then-existing first mortgages to remain unsatisfied at the time of the sale, which caused M&T Bank to wire the following approximate amounts from M&T Bank located in New York to Customers Bank located in Pennsylvania:

| DATE | PROPERTY ADDRESS | PARK AVENUE ABSTRACT FILE # | AMOUNT WIRED |
|------|------------------|-----------------------------|--------------|
| 2/27/13 | 313 Dalton Street, Philadelphia, PA | PAPARK-504 | $166,761 |
| 3/05/13 | 21 Trescott Lane, Willingboro, NJ | NJPARK-721 | $197,904 |
| 3/06/13 | 4 Tendring Lane, Cherry Hill, NJ | NJPARK-733 | $318,715 |
| 3/07/13 | 7171 Walker Street, Philadelphia, PA | PAPARK-640 | $168,611 |

7.    By his actions, defendant GEORGE BARNARD and David Fili, Jr. caused M&T Bank to sustain an actual loss of in excess of over $850,000.

All in violation of Title 18, United States Code, Sections 1344 and 2.

## COUNTS THIRTY-ONE THROUGH THIRTY-THREE

**THE GRAND JURY FURTHER CHARGES THAT:**

At all times material to this indictment:

1.      Paragraphs 1 through 13 and 15 through 64 of Count One are incorporated here.

2.      The Internal Revenue Service ("IRS") was an agency of the United States Department of the Treasury responsible for administering and enforcing the tax laws of the United States.  Under these laws, individuals were required to report income to the IRS on federal income tax return forms.

3.      Defendant GEORGE BARNARD's gross income for calendar years 2008 through 2011 exceeded the threshold required for filing an individual income tax return with the IRS.

4.      For each of calendar years 2008 through 2011, defendant GEORGE BARNARD filed and caused to be filed to with the IRS on his behalf an IRS Form 1040 income tax return with filing status married filing jointly.

5.      Defendant GEORGE BARNARD's 2008 through 2011 IRS Form 1040 tax returns were prepared by B.H., an accountant located in the Eastern District of Pennsylvania, at the direction of defendant BARNARD.

6.      In or about November 2007, defendant GEORGE BARNARD attempted to conceal his ownership of Nationwide Land Transfer by placing that company in the name of his spouse, K.B., without K.B.'s knowledge or consent.

7.      Between January 1, 2008, and December 31, 2011, at the instruction of defendant GEORGE BARNARD, numerous payments were made by employees of CFMC and

60

defendant BARNARD'S Title Companies from accounts at CFMC and defendant BARNARD'S Title Companies to, for, and on behalf of defendant BARNARD and for defendant BARNARD's personal benefit, including approximately $1,401,897 into bank accounts controlled by defendant BARNARD, approximately $440,795 for purchases, improvement, and maintenance of investment real estate properties, approximately $529,325 for purchases of luxury sport fishing yachts and salary of a yacht captain, and an additional approximately $530,425 for various other purposes for the benefit and personal use of defendant BARNARD.

8.      Defendant GEORGE BARNARD instructed employees of CFMC and defendant BARNARD'S Title Companies to delete all of their emails to and from him in order to hide the expenditures of CFMC and BARNDARD Title Company funds referenced in paragraph 7 above.

9.      Defendant GEORGE BARNARD did not declare the funds referenced in paragraph 7 above as income on the IRS Form 1040 tax returns he filed and caused to be filed for calendar years 2008 through 2011.

10.      Defendant GEORGE BARNARD's 2008 IRS Form 1040 tax return falsely claimed negative taxable income of ($343,267). This negative income figure was falsely carried forward as a net operating loss to defendant BARNARD's 2009 IRS Form 1040 tax return. Defendant BARNARD failed to report approximately $537,243.59 in income on his 2008 IRS Form 1040, and defendant BARNARD's actual income for 2008 was approximately $196,377, not the ($343,276) loss defendant BARNARD had claimed. As a result, defendant BARNARD had no net operating loss for 2008, and hence should not have claimed a ($343,276) loss as a carry over net operating loss on his 2009 IRS Form 1040 tax return.

11.    On or about the dates listed below, in the Eastern District of Pennsylvania and elsewhere, defendant

**GEORGE BARNARD**

willfully made and subscribed United States income tax returns, Form 1040, for the calendar years 2009 through 2011, which were verified by written declarations and electronic personal identification numbers attesting that each such return was made under the penalty of perjury and filed with the Director, Internal Revenue Service Center, which defendant BARNARD did not believe to be true and correct as to every material matter, in that the returns materially understated defendant BARNARD's income for calendar years 2009 through 2011, as set forth in the counts below.

| **Count** | **Date** | **Tax Year** | **Taxable Income Per Return** | **Unreported Income** | **Corrected Taxable Income** |
|---|---|---|---|---|---|
| 31 | December 6, 2010 | 2009 | $(498,382.00) | $456,095.65 | $284,979.65 |
| 32 | April 15, 2011 | 2010 | $(364,106.00) | $1,367,731.37 | $1,433,754.00 |
| 33 | October 12, 2012 | 2011 | $(263,708.00) | $541,373.75 | $581,996.00 |

All in violation of Title 26, United States Code, Section 7206(1).

## NOTICE OF FORFEITURE

**THE GRAND JURY FURTHER CHARGES THAT:**

      1.    As a result of the violations of Title 18, United States Code, Sections 1343 and 1344 set forth in this indictment, defendant

### GEORGE BARNARD

shall forfeit to the United States of America any property constituting, or derived from, proceeds obtained directly or indirectly from the commission of such offense, including but not limited to $12,710,040 in United States currency (money judgment).

      2.    If any of the property described above, as a result of any actor omission of the defendant:

          a.    cannot be located upon the exercise of due diligence;

          b.    has been transferred to, sold to, or deposited with a third party;

          c.    has been placed beyond the jurisdiction of this Court;

          d.    has been substantially diminished in value; or

          e.    has been commingled with other property which cannot be divided without difficulty;

it is the intention of the United States, pursuant to Title 18, United States Code, Section 982(b) and Title 28, United States Code, Section 24661(c), both incorporating 21, United States Code, Section 853(p), to seek forfeiture of any other property of the defendant up to the value of the property subject to forfeiture.

All pursuant to Title 18, United States Code, Sections 981(a)(1)(C), 982 and Title

28, United States Code, Section 2461.

A TRUE BILL:

_____

GRAND JURY FOREPERSON

ZANE DAVID MEMEGER
UNITED STATES ATTORNEY