GEORGE BARNARD  
REG # 75406-066  
FPC MONTGOMERY  
1001 WILLOW STREET,  
MONTGOMERY, AL  
36112

July 22, 2020

16cr273-1

AUG - 3 2020

Dear Judge Stengel,

The first positive test of an inmate at FPC Montgomery has just been confirmed. Unfortunately the inmate is housed in my dormitory and we have now been officially quarantined.

I am asking you to please grant my motion so that I can be in the safety of my own home. It is blantly obvious that the BOP cannot contain this deadly virus and with no "social distancing", correction officers not wearing masks and outside inmates from around the country being quaratined in our building has made the situation in FPC Montgomery untenable.

As I have said in my motion for compassionate release the lack of resources here at FPC Montgomery to cope is evident; we do not have one singular doctor for five hundred inmates. I pray that you intervene Judge Stengel and rule positively on my motion; so that I may serve the rest of my sentence in the safety of home confinement and the loving care of my family.

Yours truthfully,

George Barnard
GEORGE BARNARD

UNITED STATES DISTRICT COURT
DISTRICT OF PENNSYLVANIA
EASTERN DISTRICT

UNITED STATES OF AMERICA
PLAINTIFF,

v.                                CASE NO. DPAE2:16CR000273-001

GEORGE BARNARD
DEFENDANT,

MOTION FOR COMPASSIONATE RELEASE / REDUCTION IN SENTENCE PURSUANT TO 18 U.S.C. § 3582(c)(1)(A) AND 18 U.S.C. § 4205(g)

COMES NOW, THE DEFENDANT, GEORGE BARNARD PRO SE, RESPECTFULLY REQUESTING THIS HONORABLE COURT MOVES TO GRANT DEFENDANT GEORGE BARNARD IMMEDIATE RELEASE IN RESPONSE TO THE COVID-19 VIRUS. THIS MOTION IS MADE ON THE GROUND THAT UNDER FEDERAL LAW 18 U.S.C. § 3582(c)(1)(A), A SENTENCING COURT, ON MOTION OF THE DIRECTOR OF THE BUREAU OF PRISONS, MAY REDUCE THE TERM OF IMPRISONMENT OF AN INMATE SENTENCED UNDER THE COMPREHENSIVE CRIME CONTROL ACT OF 1984. THE BUREAU OF PRISONS USES 18 U.S.C. § 3582(c)(1)(A) IN PARTICULARLY EXTRAORDINARY OR COMPELLING CIRCUMSTANCES WHICH COULD NOT REASONABLY HAVE BEEN FORESEEN BY THE COURT AT THE TIME OF SENTENCING FOR INSTANCE THE COVID-19 VIRUS AND SUBSEQUENT WORLDWIDE PANDEMIC.

# STATEMENT OF THE FACTS

1. The records will show that Defendant Barnard is a "Chronic Care 2" level inmate with pre-existing diseases of liver disease, hypertension and a hemoglobin disorder. All three of these chronic illnesses are on the CDC (Centers for Disease Control) as illnesses susceptible to severe and increased risks to the COVID-19 virus.

2. Defendant Barnard has exhausted all remedies possible with his warden, Walter Wood (now retired), and his surrogates. Defendant Barnard has sent numerous electronic emails (see exhibits) and paper cop-outs asking for compassionate release as well as home confinement. His case manager Ms. Sledge has been absent from work the past two weeks. She did respond however with no response. Defendant Barnard then pursued his rights by notifying Ms. Sledge's manager, Mr. Briggs. After no tangible response there Defendant Barnard contacted the Associate Warden, Mr. Dunbar. His response was to "see your case manager (Ms. Sledge) who again has been unavailable, unresponsive and evasive. Again I would remind this honorable court that Defendant Barnard has been denied for compassionate release by the warden and was simply looking for answers to his plight as an endangered inmate who has illnesses that have been identified as extremely risky to an adverse outcome including death if he were to contract the COVID-19 virus.

3. Let the record also show that Defendant Barnard has an admirable educational record whilst incarcerated (see exhibit) and no incident reports in the

PAST 2 YEARS. DEFENDANT BARNARD HAS ALREADY SERVED OVER 50% OF HIS SENTENCE AND HAS BEEN BY ALL MEASURES A "MODEL INMATE". THE DEFENDANT HAS EXHAUSTED ALL KNOWN REMEDIES HERE AT FPC MONTGOMERY AND PRAYS THE HONORABLE COURT NOW INTERVENES AND GRANTS HIM THIS MOTION OF COMPASSIONATE RELEASE AND HOME CONFINEMENT.

4. DEFENDANT BARNARD BEING A MODEL INMATE "IS NOT A DANGER TO THE SAFETY OF ANY OTHER PERSON OR TO THE COMMUNITY," AS PROVIDED IN THE RECENT CASE IN THE THIRD CIRCUIT, EASTERN DISTRICT OF PENNSYLVANIA, UNITED STATES V. LADSON, CRIMINAL ACTION NO. 04-697-1. THE COURT NOTED LADSON, NOT UNLIKE DEFENDANT BARNARD, "HAS SHOWN REHABILITATION AND GOOD CONDUCT WHILE IN CUSTODY." THE COURT LOOKED AT THE 3553(a) FACTORS WHICH REQUIRES THE COURT TO CONSIDER FACTORS SUCH AS THE NATURE AND CIRCUMSTANCES OF THE CHARGED OFFENSE, THE HISTORY AND CHARACTERISTICS OF THE DEFENDANT, AND THE NATURE OF SERIOUSNESS OF THE DANGER TO A PERSON OR THE COMMUNITY AT LARGE POSED BY THE DEFENDANT'S RELEASE. LADSON WAS FOUND GUILTY OF CONSPIRING TO COMMIT HOBBS ACT ROBBERY AND WAS SENTENCED TO 240 MONTHS OF INCARCERATION. LADSON HAD ALSO RECEIVED DISCIPLINARY INFRACTIONS AS SOON AGO AS 2019 WHEN HE RECEIVED A CITATION FOR A "DISRUPTIVE GROUP DEMONSTRATION." LADSON'S MEDICAL RECORDS INDICATED TYPE 2 DIABETES, GOUT AND HIGH BLOOD PRESSURE. IN THIS CASE THE GOVERNMENT "DID NOT CONTEST MR. LADSON'S TYPE 2 DIABETES COMBINED WITH THE RISK OF CONTRACTING COVID-19 FOR

him satisfies the "extraordinary and compelling reasons" Congress requires to reduce a final sentence. The United States however, expressly rejects Mr. Ladson's risk of adverse outcomes from COVID-19 would fall under the catchall in Note 1(D)." In order to constitute "extraordinary and compelling reasons" the court must find (D) other reasons. As determined by the Director of the BOP, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C). The court cited that other judges recognized the risk of the combination of COVID-19 with diabetes and hypertension. The court went on to note that "Mr. Ladson is 54 years old and suffers from both ailments. His heightened risk for adverse outcomes or death is more than "extraordinary and compelling;" it is life-threatening and urgent." The court also added that Ladson was not a danger to others or the community despite being a career offender and not having a completely clear disciplinary record. Mr. Ladson had also enrolled in the Residential Drug Abuse Program but, for reasons out of his control, has not progressed beyond the beginning stages. Mr. Ladson's wife indicated that he would return to live in their home town and the owner of the hauling company stated that he was willing to work for an honest living. As noted before the court looked at the 3553(a) factors and observed that Ladson had shown

rehabilitation and good conduct while in custody. He shows he is committed to supporting himself by working." These factors weighed in favor of a reduction. The court reduced Ladson's sentence to time served but modified his supervised release to ensure his continued progress through a stable employment and community outreach. Defendant Barnard prays the court will find in the same manner.

5. The rehabilitative nature of Defendant Barnard's constant and consistent programming apexed in July of this year when he completes the Residential Drug Abuse Program, August 19th 2020. A drug and alcohol program that encompassed five hundred hours and one year off his original sentence - the 3621-E. Along with his parenting skills class, career planning and stress management course Defendant Barnard has uniquely positioned himself for a seamless transition back into his community of Southampton, Pennsylvania.

6. Under the First Step Act of 2018, home detention is now clearly qualifying as "in custody" status; this Honorable Court may waive any administrative exhaustion requirement where exhaustion would be futile; where the administrative process would be incapable of granting adequate relief. Or where pursuing agency review would subject the person seeking relief to undue prejudice. Further undue delay if in fact results in catastrophic health consequences given the devastating effects of COVID-19

to someone such as Defendant Barnard and his previously discussed health conditions. This can justify waiving an administrative exhaustion requirement given the sense of urgency in this case. In the case Wilson v. Williams, Case No. 20-3447, 2020 U.S. App. LEXIS 18087 (6th Cir. June 9, 2020) the Sixth Circuit swept aside BOP and government arguments that the inmates had to "exhaust" administrative remedies under the Prison Litigation Reform Act. This would have required each inmate plaintiff to follow the BP-9, -10 and -11 process, a futile procedure ruled the Sixth Circuit saying "that would have wasted six months." Most important, the court held that "petitioners have provided evidence that they are "incarcerated under conditions posing a substantial risk of serious harm. The COVID-19 virus creates a substantial risk of serious harm leading to pneumonia, respiratory failure, or death. The BOP acknowledges that the health risks are significant. The transmissibility of the COVID-19 virus in conjunction with dormitory-style housing which places inmates within feet of each other and the medically-vulnerable subclass's health risks, presents a substantial risk that petitioners will be infected with COVID-19 and have serious health effects as a result, including up to death." This is a foil to the government's often-made claim in opposing compassionate release motions that the BOP is adequately meeting inmate

# CERTIFICATE OF SERVICE

I, GEORGE BARNARD, HEREBY CERTIFY THAT A TRUE AND EXACT COPY OF THE FOREGOING MOTION FOR RELIEF HOME CONFINEMENT PURSUANT TO 18 U.S.C. § 3582(c)(1)(A) HAS BEEN MAILED, FIRST CLASS, TO:

UNITED STATES ATTORNEY'S OFFICE
MICHAEL S. LOWE
615 CHESTNUT STREET, SUITE 1250
PHILADELPHIA, PA 19106

ON THIS 22nd DAY OF JULY, 2020

I ATTEST TO THIS:—

*George Barnard*
GEORGE BARNARD, PRO SE